# Richmond

JAMES TANKARD DOUGHTY v. COMMONWEALTH OF VIRGINIA.

March 4, 1963.

Record No. 5549.

Present, All the Justices.

The opinion states the case.

*Daniel Hartnett (George Walter Mapp, Jr.; B. Drummond Ayres; Mapp and Mapp,* on brief), for the plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

James Tankard Doughty, defendant, was convicted by a jury on a charge of driving an automobile while under the influence of alcohol, second offense, and his punishment fixed at thirty days in jail and a fine of $100 (Code 1950, §§ 18.1-54, 18.1-58). He was sentenced accordingly, was granted a writ of error and contends here that the trial court erred in excluding testimony and in not setting aside the verdict on the ground that the evidence was not sufficient to support it.

The evidence for the Commonwealth came from three members of the State police—two troopers and a sergeant. On August 26, 1961, at about 4:30 p.m., Trooper Ross was driving south on Route 13 in Accomack county, a straight, three-lane, hard-surfaced highway 33 feet wide, when he met the defendant, who was going north and driving his automobile at 35 to 40 miles an hour, partly in the center lane. The trooper turned and followed the defendant's car for about a mile and a half. He saw it run off on its right-hand shoulder of the road at least twice, then back into its proper lane and then slightly into the center lane. When they came to a point where the shoulder of the road was wide enough for stopping the defendant's car, the trooper turned on his blinker light and was starting up alongside when the defendant cut in front of him and ran completely across the road to the left, where he struck the branches of some bushes. The defendant then cut his car sharply to the right, came back across the road and struck a telephone pole standing nine feet from the edge of the road, broke it off about six inches above the ground, and the car came to rest on its left side against the slope of a drainage ditch.

About that time Sergeant Magette arrived and he and the trooper helped the defendant, who was sitting under the steering wheel, out of the car. Trooper Partin arrived as they were getting the defendant out. Trooper Ross and Sergeant Magette walked the defendant to the trooper's car. He was very unsteady on his feet, incoherent in his speech, and there was a strong odor of alcohol on his breath. He told the officers he had not had anything to drink. He resisted getting into Trooper Ross' car until he was told he would be put in. Trooper Ross took him to jail and had to help him up the steps. On the way to the jail he asked the trooper, "Can't we do something about this?" While in the jail defendant made three telephone calls with reference to obtaining bail and later the trooper took him home. The defendant had no appearance of being injured, made no complaint of any injury or any request for medical attention.

The defendant, who operated a garage, testified that the Moose Lodge, to which he belonged, was supposed to have a dance that night so he bought a fifth of wiskey at the A.B.C. store and at about four o'clock he took the bottle to the Lodge, which was around the corner from his shop, and there checked the bottle until he went back and closed up his garage. He then went back to the Lodge to be sure about the dance, got to talking with three or four of the fellows who were there drinking beer and, said he, "* * we had— I had a mixed drink, approximately, maybe, two ounces of whiskey mixed with ginger ale". He later said he meant he had two drinks of about one ounce. The steward at the Lodge with whom the defendant checked his bottle, said he gave the defendant his bottle, the ginger ale and a two and one-half ounce glass. He said he did not see how much the defendant drank but saw how much was in the bottle when the defendant put it back in his locker and estimated a maximum of three ounces was gone out of the bottle. The defendant said he was at the Lodge some fifteen minutes and was in his car on his way home and not under the influence when the trouble occurred.

The explanation of the occurrence which the defendant sought to make was that when he saw in his side mirror the trooper's car right at his rear door, he thought the trooper indicated that he should pull over, so he then pulled over but "was scared to death" and hit his brakes too quickly; that he had grease on the soles of his shoes and his foot hit the accelerator and his car hit the pole. He did not

know what happened after that. "I was a different person," he said, everything was vague and he did not remember the things the troopers testified that he said and did.

His explanation was not convincing and the finding of the jury that he was guilty of the offense charged against him was amply supported by the evidence.

The assignment mainly stressed by the defendant is that the court erred in refusing to allow his witness, Doctor Mears, to testify as to the symptoms of concussions.

The evidence, as stated, did not indicate that the defendant received any injury at the time of the accident. He did not tell the trooper that he was hurt and admitted that he had no marks on him at that time. Nevertheless he testified that after he got home and was washing his face he realized something was wrong, that there was some blood from his nose and he had a little knot on top of his head, which was made in the accident. He did not then consult a doctor but ten days or two weeks later Doctor Mears went to his shop to see about his car. He then told Doctor Mears about the accident and about having headaches and showed him what the doctor described as a "lump on his temple," and inquired whether such a thing could come from a blow on the head. The court inquired, "What was he suffering from?" The doctor replied, "Assuming he was in an accident, which he stated to me, it could have been from a concussion. Headaches are common after a concussion." Defendant's counsel then asked Doctor Mears, "* * what are the commonest symptoms of a concussion, * * is there any similarity between the symptoms of a concussion, and that of drunkenness?" Objection to the question was sustained on the ground that the doctor had not testified that the defendant suffered from a concussion. The doctor made no answer to the question and the record does not show what his answer would have been.

There was no error in the ruling. In the first place, there was no evidence that the defendant received a blow on his head at the time of the accident which resulted in a concussion. Cf. *Virginian Ry. Co.* v. *Bell*, 118 Va. 492, 496, 87 S. E. 570, 572. He later said that he had a little knot on the top of his head caused by the accident, but what he showed Doctor Mears ten days or two weeks later was a lump on his temple. Doctor Mears testified that from the story the defendant told him it was possible that the defendant could have had a concussion, and that was all that he could say about it. Testimony

in such circumstances as to the similarity between the symptoms of concussion and of drunkenness would have been based on a presumption that the defendant received a blow on his head and to infer therefrom that he suffered a concussion of such degree as that the resulting symptoms resembled the symptoms of drunkenness. Inferences must be based on facts, not on other inferences. *Smith* v. *Commonwealth*, 185 Va. 800, 819, 40 S. E. 2d 273, 282; *Murphy* v. *J. L. Saunders, Inc.*, 202 Va. 913, 917, 121 S. E. 2d 375, 378; 7 Mich. Jur., Evidence, § 17, p. 348, § 179, p. 559.

Moreover the defendant cannot avail himself of the alleged error in the absence of showing in the record, either by having the question answered out of the presence of the jury or by an avowal, what the answer would have been. *Taylor* v. *Commonwealth*, 90 Va. 109, 114, 17 S. E. 812, 814; *Holladay* v. *Moore*, 115 Va. 66, 71, 78 S. E. 551, 553; *Jones* v. *Commonwealth*, 135 Va. 550, 115 S. E. 378.

It was stipulated that the defendant had previously, in June, 1958, been convicted of driving an automobile while under the influence of intoxicants. His counsel asked him whether he had pleaded guilty on that occasion, on the theory that it tended to prove his veracity on this trial. Objection to it was properly sustained. The fact of the former conviction was relevant only to the question of the defendant's punishment if convicted on this trial, Code § 18.1-58; *Commonwealth* v. *Ellett*, 174 Va. 403, 4 S.E. 2d 762. His reason for pleading as he did on his former trial was not a matter for inquiry on this trial.

For the reasons stated the judgment appealed from is

*Affirmed.*