Richmond

## JOHNNY EVERETT JOHNSON

### v.

## COMMONWEALTH OF VIRGINIA

No. 1147-91-2

Decided September 8, 1992

COUNSEL

R. Donald Ford, for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Johnny Everett Johnson was convicted in the Circuit Court of the County of Chesterfield of three counts of statutory burglary and three counts of grand larceny. On appeal, he contends that the evidence was insufficient to support the convictions. He also argues that the trial court erred in admitting testimony from a police detective that, in a single building of four apartments, appellant had keys to the three that were broken into and entered, but not to the single apartment that was not broken into and entered. For the following reasons, we affirm the convictions.

Appellant was tried on four counts of statutory burglary and three counts of grand larceny and convicted on three counts of statutory burglary and three counts of grand larceny. The victims of these crimes each lived alone. Each had only a single key to her apartment and had not made duplicates or lent the single key to another. The break-ins all occurred while the tenants were away. Three of them testified that, on returning, they found their doors locked and no sign of forcible entry.

The four burglary victims lived in rented rooms located in different houses managed by Carter King Properties where appellant worked as a maintenance man. By virtue of his position, appellant had access to one of two master keys that would open any of the rental units. He also had access to duplicate keys for each apartment. According to the manager of the property, these duplicate keys were kept in the management office and were kept secured when neither the manager nor appellant was working. The manager further testified that he had experienced no problems either with lost keys or with strangers gaining access to the area of the key board. In the event a key was lost, the manager's policy was immediately to change the lock.

One burglary victim, Cassandra West, testified that she spoke with appellant during the day preceding the nighttime break-in of her apartment. Appellant was changing locks on an apartment door when West saw him. During an ensuing conversation, West mentioned to appellant that a television on the floor of her apartment was broken. The following day, when West arrived home to discover the burglary, she found that the television on the floor of her apartment had not been taken. However, a second television, a stereo, and $400 in cash were missing.

Detective William Eagar testified that he had investigated the four break-ins involved in this trial as well as "all the break-ins that we were having in that area." During his investigation, he had visited a property divided into four rental units. Three of the four units had been burglarized.[1] Appellant accompanied Eagar in order to open the doors to the apartments. However, Eagar testified that, while appellant had keys to the three apartments that had been broken into, he was unable to open the door to the fourth apartment.

When Eagar was asked if he had received any report about a burglary or grand larceny in the fourth apartment, appellant objected on grounds of relevancy. The trial court overruled the objection and allowed Eagar to testify that, although he had investigated crimes in the three apartments appellant had been able to open, he had not investigated any crimes in the fourth apartment. On cross-examination, Eager added that he had investigated "all the break-ins that we were having in that area."

Appellant contends that the evidence presented at trial was insufficient to support his convictions of statutory burglary and grand larceny. We disagree.

■ "[I]t is within the province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." *Beck v. Commonwealth*, 2 Va. App. 170, 176, 342 S.E.2d 642, 645 (1986). Here, absent any evidence of a forced entry, the jury reasonably inferred that access to the apartments was gained with a key.

■ The jury heard testimony that only two individuals had access to keys that would open the apartments where the crimes occurred. Considering that "[t]he credibility of witnesses is a matter for the jury to

---

[1] The evidence does not establish whether any of these three burglarized units are the subject of this appeal.

decide," *Mullis v. Commonwealth*, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987) (citing *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949)), we cannot say that the jury's exclusion of the manager as a suspect was unreasonable. The Commonwealth is not required to exclude the possibility that another may have committed the crime. *Fordham v. Commonwealth*, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991). Instead, "[t]he Commonwealth is only required to exclude hypotheses of innocence that flow from the evidence, and not from the imagination of the accused's counsel." *Id.*

Appellant further contends that the trial court erred in allowing Eagar to testify that, in a building of four apartments, the only apartment not broken into was the only apartment to which appellant could not provide access.

During direct examination of Detective Eagar, appellant did not object to testimony that appellant had been unable to open the fourth apartment, which, according to Eagar, was the only apartment in that building for which he had not investigated a break-in. On cross-examination, Eagar stated that he had investigated "all the break-ins that we were having in that area." Again, it was "within the province of the jury" whether to draw an incriminating inference from the fact that the only apartment not broken into was also the only apartment to which appellant could not give Eagar access. *Beck*, 2 Va. App. at 176, 342 S.E.2d at 645.

Appellant argues that Eagar's testimony that no break-in had occurred at the fourth apartment was not a fact but an inference; thus, his argument continues, the jury convicted him only after making an inference based on another inference. According to this argument, the underlying inference is that Eagar would have known about a break-in of the fourth apartment because it would have been reported. Thus, appellant asserts, the jury's decision to convict violated a rule at times relied on by the Virginia Supreme Court that "[i]nferences must be based on facts, not on other inferences." *Doughty v. Commonwealth*, 204 Va. 240, 244, 129 S.E.2d 664, 666 (1963).

■ The "rule" appellant has relied on in making his argument is not absolute. In fact, it has been said that "there is no rule of law which prohibits basing an inference or presumption upon another inference or presumption." Charles E. Friend, *The Law of Evidence in Virginia* § 91, at 266 (3d ed. 1988). The Virginia Supreme Court has acknowledged the same.

There is no such rule, nor can [there] be. If there were, hardly a single trial could be adequately prosecuted. . . . The judicial utterances that sanction [this] fallacious and impractical limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein relied upon.

*Chesapeake & O. Ry. v. Ware*, 122 Va. 246, 255-56, 95 S.E. 183, 186 (1918) (citation omitted). Instead, the Court has held that the "true rule" is that all facts proved in a case, whether by direct *or* circumstantial evidence, "may serve as the basis from which further inference of fact may be drawn." *Id.* at 257, 95 S.E. at 186-87. Thus, the rule's true limitation is that the evidence presented must establish a fact, "in the same manner as if they were the very facts in issue," before that fact may serve as a basis for inference. *Id.*

Modern Virginia case law is in harmony with the rule as explicated in *Ware*. Cases in which the "rule" is invoked generally involve reliance on an inference unsupported by the evidence or inferences that are "extremely attenuated." *See, e.g., Doughty*, 204 Va. at 244, 129 S.E.2d at 666.

Here, direct evidence in the form of the testimony of Detective Eagar supported the inference that the fourth apartment had not been broken into. Again, Eagar testified both that the fourth apartment was the only one for which he had not investigated a break-in and that he had investigated "all the break-ins that we were having in that area." This evidence was sufficient to allow the jury to conclude that the fourth apartment had, in fact, not been broken into and to treat this established fact as a basis for the inference that appellant had burglarized the apartments to which he did have access.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Willis, J., concurred.

Benton, J., dissenting.

In a criminal case, where the quantum of proof must be beyond a reasonable doubt, the imperative to secure convictions free of speculation, surmise, and conjecture is constitutionally based. *See In re Winship*, 397 U.S. 358 (1970). In the trial of this case, the only evidence offered by the Commonwealth that did not require the trier of fact to speculate, conjecture, or surmise while assessing Johnson's guilt

or innocence was evidence of opportunity. Yet it is well established that "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.' " *Christian v. Commonwealth*, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting *Simmons v. Commonwealth*, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)).

> All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

*Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The evidence conclusively established that burglaries occurred in four rental rooms, each located in a different house. The rooms were rented to students and managed by Richard W. Bolton, an agent of Carter King Properties. The evidence proved that a fifth house was entered; however, no loss was proved to have resulted from that entry. The evidence presented in this case was insufficient for the jury to have found, beyond a reasonable doubt, that Johnny E. Johnson committed the crimes. Evidence described by the majority as inculpatory is too speculative, attenuated, or irrelevant to constitute circumstantial evidence supporting Johnson's conviction.

The majority states that Johnson had access to the keys in the rental office. However, Johnson was not the only person with access to the keys. Bolton also had access to the keys and testified that he often entered the rooms when the occupants were away to check for repairs. The evidence further established that the rental company maintained two master keys and individual duplicate keys that could have been used to open the doors of the rooms that were entered. Bolton explained that each duplicate key to the lock of each room had the individual room number marked on it and was hung on a pegboard in the rental office. The board is in full view of anyone who visits the rental office. Indeed, an occupant of one room testified that when she visited the rental office she saw "a board in his office, and the keys all sit in the office, and it has the room numbers with the little red circle type."

The majority asserts that the jury could have found evidence of culpability in an exchange between Johnson and Cassandra West, the day before her room was burglarized. Any such conclusion would amount to sheer conjecture by the jury. The evidence proved that while Johnson was changing a lock on the door of one of the rooms in the house West occupied, Johnson noticed that the television set was missing from the room and asked West if she knew where the television was. When West told him that it was on the floor of her room, Johnson told her to put it back in the room where it belonged. She told him that it was on her floor because it was broken.

The following night, West left her room at 11 p.m. She testified that she had seen Johnson drive by in the management company's work van between 9:30 and 10:30 p.m. When she returned three hours later, she discovered that cash and property were missing from her room. There was no sign of forced entry found into West's room or into any of the other rooms that were entered. However, the evidence did not prove whether the doors had deadbolt locks or the easily manipulated locks found in doorknobs. The jury reasonably could have concluded only that the person who entered the rooms may have had a master key, had duplicate keys, or was skilled at opening locks using tools.

The majority contends that Johnson's guilt is proved circumstantially because the television set that West told him was broken was not taken by the burglar. This reasoning is nothing more than mere conjecture. Johnson worked for the management company for two years. Johnson fixed things that were broken, changed light bulbs, put shades on windows, and did other odd jobs. When repairs were needed, both Johnson and the property manager entered rooms to make the repairs. One of the victims testified that on prior occasions when Johnson entered her room to make repairs "nothing was missing." It is not disputed that Johnson was performing his job in one of the rooms when he noticed that the tenant's television was missing. His admonition to West to return the television to the tenant's room is consistent with protecting the absent tenant's property.

The majority's hypothesis is no more likely than the hypothesis that a burglar entered the room, saw one television plugged into an electrical outlet and the other on the floor unplugged, and concluded that the television on the floor was inoperable. Moreover, the evidence contains no information concerning the sizes, descriptions, or relative values of the two televisions. By upholding the conviction on this evidence the majority has converted suspicion from an otherwise innocuous conversation into proof that supports a conviction.

The majority also concludes that they "cannot say that the jury's exclusion of the manager as a suspect was unreasonable." However, there is no evidence contained in the record that the manager was excluded by the jury as a suspect. Johnson was the only person tried for this offense. We do not know what the jury thought of the manager or his possible involvement in the burglaries. Indeed, if the manager had been indicted and tried on this evidence, this jury might have convicted him based on his access to the keys, his frequent appearances in and around the rooms, and the content of his conversations with tenants. In view of the "evidence" leading to Johnson's conviction, this possibility is not so remote.

"Whenever the evidence leaves indifferent which of several hypotheses is true, or merely establishes only some finite probability in favor of one hypothesis, such evidence does not amount to proof of guilt beyond a reasonable doubt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985). Thus, where the evidence " 'is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates' " the accused. *Harrell v. Commonwealth*, 11 Va. App. 1, 11, 396 S.E.2d 680, 685 (1990) (quoting *Corbett v. Commonwealth*, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969)). A reasonable hypothesis that flows from the evidence is that someone (other than Johnson) entered the apartments by using duplicate keys, a pass key, or by using a device to open the locks. The evidence proves only that Johnson had access to the keys. However, the evidence also proves that Bolton had access to the same keys. Furthermore, the evidence proves that duplicate keys identified by room number were on display on a board in the office accessible to anyone with the disposition to remove them for duplicating or for use in entering the rooms. Simply put, the evidence is insufficient to prove Johnson committed the burglaries.

Although the above discussion is dispositive of the case, I believe that the majority's discussion of inferences compels a reply. The Supreme Court has unequivocally stated in criminal cases that "[i]nferences must be based on facts, not on other inferences." *Doughty v. Commonwealth*, 204 Va. 240, 244, 129 S.E.2d 664, 666 (1963). *See also Kayh v. Commonwealth*, 219 Va. 424, 427, 247 S.E.2d 696, 698 (1978); *Harrison v. Commonwealth*, 211 Va. 8, 11, 174 S.E.2d 783, 785 (1970). "The rule referred to is firmly established and is a correct and wise rule when correctly applied." *Chesapeake & Ohio Ry. v. Ware*, 122 Va. 246, 255, 95 S.E. 183, 186 (1918).

Despite the majority's reliance on Charles E. Friend, *The Law of Evidence in Virginia* § 91 (3d. ed. 1988), the Supreme Court has not disavowed the "rule" but simply defined its exception:

"There is an important exception to that rule however. A *fact* in the nature of an inference may itself be taken as the basis of a new inference, whether intermediate or final, provided the first inference has the required basis of *a proved fact.*" . . . [T]he . . . inference referred to in the rule in question is . . . [an] inference which may and often should be drawn but which in the case in which the rule in question is applied is not *a proved fact.* If the inference or presumption is based on such evidence that it may be regarded as *a fact proved* in the case, then, although the evidence on which it is based may be circumstantial evidence, such inference or presumption of fact may itself form the basis for another inference of fact, equally as if it had been proved by direct evidence.

*Ware*, 122 Va. at 255, 95 S.E.2d at 186 (citation omitted). In a lengthy, persuasive analysis of the sharp divergence between "the text writers on the one hand, and the Courts on the other," *New York Life Ins. Co. v. McNeely*, 79 P.2d 948, 954 (Ariz. 1938), the Supreme Court of Arizona observed:

After a careful examination of both the cases and the texts, we are of the opinion that the divergence is more in the form of stating the rule than the application thereof. As Dean Wigmore has frequently pointed out in his monumental work, the rules of evidence applied by the courts are not, and never have been, governed strictly by the principles of logic as taught and applied in the schools. These principles are frequently modified or even set aside on account of practical reasons, which experience shows should govern the trial of controverted issues in the courts. It is true, of course, that in everyday life, all men frequently act as the result of the repeated piling of inferences upon inferences, and, as a matter of strict logic, if an inference has any probative value whatever in aiding one to determine the ultimate question of fact, it should be considered. The principle which is applied by the average man in his own private affairs usually is that no matter how many inferences are piled on each other, it is only necessary that each successive inference should be more probable than any other which might be drawn under all the circumstances. The courts, however, have always insisted that the life, liberty and property of a citizen should not be taken away on possibilities,

conjectures, or even, generally speaking, a bare probability. *In criminal cases, they demand that when a conviction is to be based on a chain of inferences, each and every link in that chain must exclude every other reasonable hypothesis.* In civil cases, involving only property rights, the rule is not so strict, and it is sufficient, if the ultimate fact is to be determined by an inference from facts which are established by direct evidence, that it be more probable than any other inference which could be drawn from the facts thus proven. *But when an inference of the probability of the ultimate fact must be drawn from facts whose existence is itself based only on an inference or a chain of inferences, it will be found that the courts have, with very few exceptions, held in substance, although usually not in terms, that all prior links in the chain of inferences must be shown with the same certainty as is required in criminal cases, in order to support a final inference of the probability of the ultimate fact in issue.* We think that this is the true meaning of the "inference upon inference" rule in civil cases as borne out by a careful analysis of the majority of cases in which it has been applied, and that the courts do not mean that under no circumstances may an inference be drawn from an inference, but rather that the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a *probability*, in order that the last inference of the probability of the ultimate fact may be based thereon. This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain quantum of proof is arbitrarily required when the courts are asked to take away life, liberty or property.

*Id.* at 954-55 (emphasis added).[2]

The Supreme Court of Rhode Island has also observed that remoteness of reasoning from the proved facts will be viewed as an inappropriate pyramiding of reasoning.

[T]he factfinder is permitted to base an inference on another that is already drawn. However, our case law makes clear that if a

---

[2] Although there may sometimes appear to be a dichotomy between some questions of logic and law, "a prominent logician has taken the view that, at least in some contexts, it is rational—and perhaps desirable,—to require that foundational inferences (inferences supporting later inferences in the chain) be established as practically certain and that only when this is done is it legitimate to rest subsequent inferences upon the prior inference." 1A *Wigmore on Evidence* § 41, at 1120 n.3 (Tiller's rev. ed. 1983) (citing L. Jonathan Cohen, *The Probable and the Provable* 68-73 (1977)).

plaintiff intends to meet its burden of proof by means of such pyramiding, the second or ultimate inference drawn by the factfinder is permissible only if the first or prior inference has been established to the exclusion of other reasonable inferences. In this way, the ultimate inference rests upon a foundation that logically has the probative force of established fact; were it otherwise, the ultimate conclusion . . . would rest on no more than conjecture and surmise.

*Carnevale v. Smith*, 122 R.I. 218, 225, 404 A.2d 836, 840-41 (1979) (citations omitted).

The majority's application of the exception to the rule that "[i]nferences must be based on facts, not on other inferences," *Doughty*, 204 Va. at 244, 129 S.E.2d at 666, is essentially flawed and is a demonstration of how the loose application of an exception can swallow the rule. In order to limit findings and conclusions to bounds of rationality and to avoid speculation and conjecture, limits must be placed upon the scope of deductions that are permissible. It is not enough for an appellate court to find that the record in a criminal case contains *some* evidence of guilt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979). Circumstantial evidence must be probative enough to prove guilt beyond a reasonable doubt. *Id.* at 313-16. The underlying inference that a room in one of the houses was not burglarized is a tenuous inference when drawn on the circumstantial evidence proved in this record. Moreover, the record is devoid of any reasonable or probable explanation which makes that inference probative to an inference that Johnson committed the burglaries.

Detective Eagar testified that at some unspecified time after the string of burglaries, he asked Johnson to unlock four separate rooms located in one of the houses managed by Carter King Properties. Eagar testified that he had reports that burglaries had occurred in three of those four rooms. Eagar testified, over the objections of Johnson, that he had received no report of a break-in from the occupant of the fourth room. Eagar also testified that he had investigated all related break-ins in the area occurring during the relevant time span. Eagar testified that Johnson was able to unlock the three rooms that had been entered but could not unlock the door of the fourth room.

In concluding that an inference that the fourth room had not been broken into provided sufficient evidence upon which to base an inference that Johnson broke into other rooms, the majority has approved a

shaky stack of speculative, attenuated, and unrelated inferences leading to Johnson's convictions. The underlying inference is derived from evidence establishing that: (1) Eagar was investigating all break-ins in the area during the relevant period of time; and (2) Eagar was never notified of a break-in in the fourth room of one of the houses. The Commonwealth claims the inference to be drawn from that testimony is that the fourth room was not burglarized. From this inference, the majority concludes that sufficient evidence exists to find that Johnson committed the burglaries because: (1) the fourth room was not entered; (2) Johnson could not unlock the fourth room on the day he agreed to open the four rooms in the house for Eagar's inspection; and (3) Johnson could open the three rooms which had been entered. This stack of inferences is structurally unsound because there is no evidence—direct, testimonial, or circumstantial —which, when considered along with the tenuous inference that the fourth room was not burglarized, reasonably supports the inference that it was Johnson who committed the crime. According to Eagar's testimony, break-ins occurred in five separate houses that Carter King Properties managed during the relevant time period. The record indicates that the majority of the tenants in the houses were students at a nearby university and that the burglaries occurred over the course of their school's Christmas holidays. The four victims who testified at trial lived in four separate houses that Carter King Properties managed. Each victim described a rental arrangement in which tenants rented individual rooms within a house and had keys to the front door of that house and to their own rooms. Each of these houses contained three, four or six rental rooms. None of the victims testified that other rooms in the houses they occupied were broken into. Eagar's testimony described only his investigation of break-ins occurring at one house managed by Carter King Properties. That house contained four rental rooms; however, the record does not prove that the victims who testified at trial were residents of that house. Thus, it is clear that the testimony at trial proved that Carter King Properties managed houses containing between fifteen and thirty rental rooms and that break-ins occurred in five of the rooms.

The majority finds probative value in the fact that Johnson could not unlock the door of one room out of these fifteen to thirty rooms. This inference is far too attenuated and speculative to support yet another inference that Johnson committed the three burglaries for which he was convicted. For example, several of the other houses that Carter King Properties managed may have contained rooms that were not burglarized. The record does not prove that Johnson was unable to

unlock those doors if he had been asked by Detective Eagar. Conversely, there may have been rooms that were broken into, although Johnson would not have been able to unlock the doors for Detective Eagar. "Whenever the evidence leaves indifferent which of several hypotheses is true, or merely establishes only some finite probability in favor of one hypothesis, such evidence does not amount to proof of guilt beyond a reasonable doubt." *Sutphin*, 1 Va. App. at 248, 337 S.E.2d at 900.

The majority's decision to uphold the conviction in this case cannot be explained by its rejection of the clear principle announced by the Supreme Court in *Doughty*. Even if the law in Virginia were as the majority asserts it should be, the inference that the majority draws on another inference is irrelevant to any issue in this case. It is irrelevant to the crimes charged which doors Johnson could or could not unlock on the day Detective Eagar asked him to unlock the rooms for him. Although the evidence does not disclose Johnson's employment status on that day, it is likely that Johnson was employed by Carter King Properties when Eagar asked him to unlock the doors. As a maintenance employee for Carter King Properties, Johnson had legitimate access to all keys. No evidence proved that on the day Johnson opened the doors for Eagar Johnson used keys that were solely and without interruption in his possession from the date the burglaries began. Bolton testified to no deviation from the normal course of business involving the keys during the relevant time period:

> The keys are kept in a little office that we work out of. If there is a maintenance problem to be done on the specific building, Johnny picked the key up and go perform the maintenance; and the keys are returned to the office; and they are secured supposedly when we are not working.

Thus, no inference of criminality may be drawn from Johnson's actions on the day he showed Eagar the rooms. Johnson was acting within the scope of his employment, using keys to which he legitimately had access at the request of a police officer investigating burglaries in properties managed by his employer. The fact that he could not unlock one door on an unspecified date after the burglaries is irrelevant. "Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence." *Bunting v. Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967).

Thus, it is clear that even if the jury could permissibly infer that the fourth room was not burglarized, that inference is unrelated and irrelevant to an inference of guilt.

> [W]hat is meant by the rule forbidding the basing of one inference upon another inference is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. Permissible presumptions or inferences, as understood in the law of evidence, must have substantial probative force as distinguished from surmise. While reasonable inferences may be drawn from the facts and conditions shown, they cannot be drawn from facts or conditions merely imagined or assumed.

*State v. Cruz*, 15 Kan. App. 2d 476, 491-92, 809 P.2d 1233, 1244 (1991) (citations omitted). *See also Sutton v. State*, 571 N.E.2d 1299, 1303-04 (Ind. Ct. App. 1991); *State v. Reese*, 319 N.C. 110, 143, 353 S.E.2d 352, 368 (1987); *State v. Ebright*, 11 Ohio App. 3d 97, 99, 463 N.E.2d 400, 403 (1983). "Proof is something that may depend on what is probably inferable from known facts, but not on what is certainly inferable from probable ones." L. Jonathan Cohen, *supra*, at 73.

"It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense for which a defendant is being tried." *McGhee v. Commonwealth*, 219 Va. 560, 561, 248 S.E.2d 808, 810 (1978). "[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused]." *Corbett*, 210 Va. at 307, 171 S.E.2d at 253. The guilt of an accused may only be upheld upon evidence that proves a rationally supportable "subjective state of near certitude." *Jackson*, 443 U.S. at 315. In this instance, the only legitimate "fact" which connects Johnson to the crimes is his access to the keys that may have unlocked the doors of the rooms burglarized. In the absence of other circumstantial evidence that is not speculative and irrelevant, insufficient evidence supports this conviction.

I dissent.