COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


GEITH, INC. AND
 COMMERCIAL UNION INSURANCE COMPANY

                                       MEMORANDUM OPINION* BY
v.    Record No. 1822-01-2            JUDGE ROBERT J. HUMPHREYS
                                           MARCH 19, 2002
DALE E. WILBORNE


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Arthur T. Aylward (Kevin T. Streit; Midkiff,
            Muncie & Ross, on brief), for appellants.

            No brief or argument for appellee.


      Geith, Inc. appeals a decision of the Workers' Compensation

Commission awarding Dale E. Wilborne temporary total disability

benefits.  Geith argues that the commission erred in finding

that Wilborne suffered a compensable injury.  The issue is

whether Wilborne sustained an injury arising out of and in the

course of his employment.  For the reasons that follow, we

reverse the decision of the commission.

      On April 1, 1998, Wilborne worked for Geith, Inc. as a

fitter/welder.  His duties in this capacity included fabricating

and welding steel parts.  On that particular date, he was

working on a "bucket," which is the front shovel on a bulldozer.

_____

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

The bucket was approximately eight feet high and six feet wide. In order to work on the bucket, Geith used a portable rolling staircase. The staircase consisted of three steps and a top platform. The staircase rested on wheels which collapsed and folded inward under the weight of the user, making the steps stable.

Wilborne testified that on the date of the injury, the wheels on one side were not collapsing properly, making the staircase unstable. Nevertheless, he testified that he walked up and down the staircase four to five times without incident. Later, as he attempted to step off the bucket onto the platform, he testified that "the step wasn't there. I don't know if – I don't know exactly if it moved or what exactly happened, but it wasn't there when I put my foot down." As he fell, he tried to grab onto something, but the staircase had no handrail, so there was nothing for him to grab onto. He fell from the staircase almost to the floor, injuring his right knee.

Wilborne testified that he did not slip or trip coming down the stairs. He further stated that after the fall, he told his supervisor that he was not sure what had caused his fall. He stated he told his supervisor he was not sure whether he had tripped or if the steps moved. However, at the hearing he testified, "to this point right now, I believe the staircase moved," causing the fall. Nevertheless, he conceded that he

told the insurance adjustor that he may have miscalculated the step.

Wilborne further testified that the stairs on the staircase seemed like they were farther apart than normal stairs, but he "[couldn't] remember exactly." Wilborne also stated that there was "no way" to get his entire foot on a stair. Finally, he claimed that the lighting conditions were poor and obscured in that area, due to a crane blocking the light.

Wilborne's supervisor testified that when Wilborne reported the incident to him, he stated his knee went out while he was descending the stairs. Wilborne also told medical personnel that he stepped "down from a ladder and [his] knee gave out" and that he was "walking down a set of portable stairs at work [, when his] [l]eg got twisted on stairs."

Wilborne's supervisor stated that the stairs on that particular staircase were evenly spaced, ten inches apart. He also testified that the width of the individual stairs was twenty inches and that there were no side rails on the staircase.[1] Wilborne's supervisor and co-worker had used the staircase several times prior to Wilborne's injury, and neither experienced any problems. Wilborne's supervisor also testified

---

[1] He further testified that a handrail is not necessary on the staircase to meet OSHA regulations, because it is under forty inches in height.

that he measured the light in the area using a light meter and found that the light level exceeded the light in his own office.

A co-worker who was working near Wilborne at the time he was injured, testified that he witnessed the incident. He stated he "turned around and [Wilborne] was more or less turning to the side to step back down the ladder and he crouched down and grabbed his leg and he stepped down the steps and walked over to – I went to see if I could help him." He further testified that the lighting conditions in the area at the time of the injury were adequate. He stated that he could see well enough to read and to see the stairs on the staircase.

Based on the above, the commission found:

> the evidence predominates that [Wilborne] fell either because the rolling staircase moved, or because in placing his foot on a step which was smaller than his foot, with no handle to hold onto, disembarking from a bulldozer shovel, with the light partially obscured, he misstepped and lost his balance. Under either scenario it was more likely a risk of the employment which prompted the fall, not a syncopal spell or an idiopathic medical condition.

The sole issue on appeal is whether the commission erred in finding Wilborne's injury arose out of and in the course of employment.

In order for an injured worker to recover under the Act, he must prove an injury by accident "arising out of and in the course of the employment." Code § 65.2-101. "Whether an injury

arises out of and in the course of employment involves a mixed question of law and fact, which we review <u>de</u> <u>novo</u> on appeal."[2]

"We have held that in order for a fall on stairs to be compensable there must either be a defect in the stairs or claimant must have fallen as a result of a condition of the employment."[3]  Here, the commission found, based on the evidence, that Wilborne's fall was caused either because the rolling staircase moved, or because the steps were small, there was no handrail and the lighting conditions were poor, causing him to misstep.

However, in the case of an unexplained fall, "a claimant must prove by a preponderance of the evidence that the fall 'arose out of' the employment by establishing a causal connection between his or her employment and the fall."[4]  In this case, the commission was persuaded that the condition of the stairs and/or the environment caused Wilborne's fall, but no credible evidence supports this finding.  The mere fact that the wheels were not collapsing properly, or that the steps were small, there was no handrail, and the lighting conditions were poor, does not establish the basis for Wilborne's fall.

---

[2] <u>Blaustein v. Mitre Corp.</u>, 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001).

[3] <u>County of Buchanan School Bd. v. Horton</u>, 35 Va. App. 26, 29-30, 542 S.E.2d 783, 784-85 (2001).

[4] <u>PYA/Monarch & Reliance Ins. Co. v. Harris</u>, 22 Va. App. 215, 224, 468 S.E.2d 688, 692 (1996).

Further, Wilborne admitted telling his supervisor that he wasn't sure "exactly what happened." He testified that he "went to step and there was nothing – the step wasn't there. I don't know if – I don't know exactly if it moved or what exactly happened but it wasn't there when I put my foot down." He later testified, "to this point right now, I believe the staircase moved on me."

It is clear from Wilborne's own testimony that at the time of the injury, he did not know the cause of the fall. At one point, he indicated his knee "gave out," resulting in the fall. At another point he did not know "exactly what happened." His statement at the hearing that "[t]o this point right now, I believe the staircase moved on me" clearly indicates his present interpretation of the events of the fall. However, this is speculation at best, which cannot serve as factual basis for the commission's finding.[5] Thus, Wilborne failed to prove the requisite causal connection between his employment and his fall.[6]

We are mindful that factual findings of the commission, based on credible evidence, are conclusive and binding upon this Court.[7] Further if "reasonable inferences" may be drawn from

---

[5] See Sullivan v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 506 (1938) ("[a]n award based upon surmise or conjecture will be set aside").

[6] See PYA/Monarch, 22 Va. App. at 224-25, 468 S.E.2d at 692.

[7] See Fairfax Hospital v. DeLaFleur, 221 Va. 406, 410, 270 S.E.2d 720, 722 (1980); Code § 65.2-706.

- 6 -

credible evidence, "they will not be disturbed by this Court on appeal."[8]  However, before circumstantial evidence "may serve as the basis from which further inference of fact may be drawn," it first "must establish a fact," reliance upon which is not to be "extremely attenuated."[9]  While the record here may establish Wilborne's injury in the course of employment, as stated above, it does not establish that Wilborne's injury arose out of the employment.  The evidence here simply does not support the factual inferences drawn by the commission.  Accordingly, the decision of the commission is reversed.

Reversed and dismissed.

---

[8] Hawks v. Henrico County School Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).

[9] Johnson v. Commonwealth, 15 Va. App. 73, 77, 422 S.E.2d 593, 595 (1992).

Elder, J., dissenting:

I believe the record contains credible evidence to support the commission's conclusion that the injury sustained by Dale E. Wilborne (claimant) on April 1, 1998, arose out of his employment. Thus, I would affirm the commission's award of benefits, and I respectfully dissent from the majority's reversal of that award.

In order for an injury to be compensable under the Workers' Compensation Act (the Act), it must "arise out of" and occur "in the course of" employment. Code § 65.2-101; see County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). "Arising out of" refers to the origin or cause of the injury. Richmond Mem. Hosp. v. Crane, 222 Va. 283, 285, 278 S.E.2d 877, 878 (1981). "An injury arises out of the employment if there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury." Marion Corr. Treatment Ctr. v. Henderson, 20 Va. App. 477, 480, 458 S.E.2d 301, 303 (1995). An injury does not arise out of one's employment if it is caused by "a hazard to which the employee would have been equally exposed apart from the employment." United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985). Thus, our case law holds that an employee's fall on stairs is compensable only if either a defect exists in the stairs or the employee fell as a result of a condition of the

- 8 -

employment.  See, e.g., County of Buchanan Sch. Bd. v. Horton,
35 Va. App. 26, 29, 542 S.E.2d 783, 784-85 (2001).

Although the commission's decision that an accident arises
out of employment involves a mixed question of law and fact,
Mullins v. Westmoreland Coal Co., 10 Va. App. 304, 307, 391
S.E.2d 609, 611 (1990), the determination of causation is a
question of fact, Ingersoll-Rand Co. v. Musick, 7 Va. App. 684,
688, 376 S.E.2d 814, 817 (1989).  "If there is evidence or [if]
reasonable inference[s] . . . can be drawn from the evidence to
support the Commission's findings [of fact], they will not be
disturbed by this Court on appeal, even though there is evidence
in the record to support contrary findings of fact."  Caskey v.
Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11
(1983).  Thus, the "inquiry must be whether credible evidence
supports [the commission's] finding that a defect in the stairs
or a condition of [claimant's] employment caused [him] to fall
down the steps . . . ."  Southside Va. Training Ctr. v. Shell,
20 Va. App. 199, 203, 455 S.E.2d 761, 763 (1995).

The commission found that

> claimant fell either because the rolling
> staircase moved, or because placing his foot
> on a step which was smaller than his foot,
> with no handle to hold onto, disembarking
> from a bulldozer shovel, with the light
> partially obscured, he misstepped and lost
> his balance.  There was nothing for
> [claimant] to grab onto.  Under either
> scenario it was more likely a risk of the

employment which prompted the fall, not a syncopal spell or an idiopathic medical condition.

Credible evidence in the record, in the form of the claimant's testimony, supports the commission's conclusion. That the record may also contain evidence which would support a contrary finding of fact is irrelevant.

The evidence established that when the accident occurred, claimant was in his employer's shop working on an "earth moving bucket" which was seven to eight feet tall and six to eight feet wide. Claimant and a co-worker, Steven Crabtree, were using an overhead crane to "plac[e] a jig on top of the bucket." "[T]he only way [for claimant] to reach the top of the bucket" in order to perform his work was to stand on a portable staircase which had collapsible, spring-loaded wheels. Claimant testified that "when you step on [the staircase], the wheels are supposed to collapse and . . . set firm to the ground." On the day of the accident, however, the wheels on the left side of the staircase were not collapsing as they were supposed to, and the staircase remained uneven and moved while claimant was using it. The staircase did not have handrails. Due to the absence of handrails, claimant positioned the staircase "alongside the bucket" rather than "pointing away from the bucket" so that he would "[have] the side of the bucket to grab onto in case something would happen."

Claimant testified that lighting conditions on the staircase were poor because "the crane [they were using to lift the jig] would block the only light that [he] had."  Crabtree agreed that it was possible to position the crane between the ceiling lights and work area and that the crane, when so positioned, would block the light "to some degree."

Photographs of the staircase showed that the steps had no backs; the staircase consisted of a metal frame with four horizontal steps attached to the frame on both sides, but the steps were not connected to one another with vertical dividers.  Claimant's supervisor, plant manager Andrew Fitzsimmons, testified that the staircase was under forty inches in height, that the steps were "evenly spaced at ten inches," that the part of the step "that you stand on" is "twenty inches wide," and that he believed the platform at the top of the steps was "twenty by sixteen" inches.  When asked how the design and spacing of the steps on the floating staircase compared to the stairs in the building where the hearing was held, Fitzsimmons was unable to make a comparison.  Claimant, however, said the collapsible stairs were different from "normal stairs in a building or a house."  He testified that "there was no way to get your whole foot [on] the stair" and that "the steps seem[ed] like they were a little further apart than what a normal stair is," "taller in-between steps."

Claimant testified at the September 24, 1998 hearing that when the accident occurred, he was on the top of the staircase and had just "unhook[ed] the crane or tak[en] tools off the top of . . . the bucket." "[L]ighting conditions . . . where [he] was] working" were "[v]ery poor," too poor to "read a blueprint." "[He] came off . . . the top of [the] bucket" and "was on top of the staircase." When "[claimant] went to step [down]," he put his foot down and "the step wasn't there." "[He] tried to grab onto something," but the staircase had no handrails, and "there was nothing to grab." He then "got [his] leg tied up in the stairs . . . and fell . . . almost to the floor."

Claimant admitted he did not know precisely what had happened to cause his fall and that he "wasn't sure if the stairs moved or if [he] tripped" or "misstepped." However, he did not waiver from his testimony that "[the step] wasn't there when [he] put [his] foot down." The record established that claimant relayed this same information to the insurance company's representative on April 21, 1998, just three weeks after the accident.

Whether claimant described the incident to his co-worker or supervisor in this fashion immediately after the accident occurred is not dispositive because the commission found credible claimant's hearing testimony about how the injury

- 12 -

occurred.  Further, claimant testified the pain was so great immediately after the accident that he almost passed out and that he sat still for fifteen minutes trying to "regain[] [his] composure."  Thus, the commission could reasonably have found that claimant's failure, if any, to tell Crabtree and Fitzsimmons precisely how the accident occurred resulted from the severity of the pain he experienced after the fall and not from a lack of awareness as to what had happened.

How claimant described the incident to treating medical personnel also is not dispositive.  Claimant testified before the commission that his treating physician did not "ask [him] for a precise description of exactly what happened."  The physician asked him what happened, and claimant responded that "[he] fell off a staircase."

Thus, the record contains credible evidence to support the commission's finding that the fall occurred "either because the rolling staircase moved, or because [when claimant] plac[ed] his foot on a step which was smaller than his foot, with no handle to hold onto, disembarking from a bulldozer shovel, with the light partially obscured, he misstepped and lost his balance."  As the commission further found, "[u]nder either scenario it was more likely a risk of the employment which prompted the fall, not a syncopal spell or an idiopathic medical condition."

Because credible evidence supports the commission's finding that claimant's injury arose out of his employment, I would affirm the commission's award, and I respectfully dissent.