COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Causey

QUANTELL TONETTE BOWSER

v.     Record No. 1209-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 19, 2023

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

(Sante John Piracci; Sante J. Piracci P.C., on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Susan Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Quantell Bowser of misdemeanor petit

larceny of property with a value of less than $1,000, in violation of Code § 18.2-96.  Bowser

challenges the sufficiency of the evidence to sustain her conviction and argues that the trial court

abused its discretion by not deferring disposition of her case.  After examining the briefs and

record in this case, and as Bowser has unilaterally waived oral argument, the panel unanimously

agrees that oral argument is unnecessary because "the appeal is wholly without merit," "the

dispositive issue or issues have been authoritatively decided," and "the appellant has not argued

that the case law should be overturned, extended, modified, or reversed."  Code

§ 17.1-403(ii)(a)-(b); Rule 5A:27(a)-(b).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Jaila Cooper testified that, on July 14, 2021, she and Bowser—Cooper's aunt—were in Bowser's car on their way to the beach. Cooper had her book bag in the car with her wallet inside of it because she was going to spend the night at Bowser's house after they returned from the beach. They stopped at Cooper's house to get swimming trunks for Bowser. Cooper went inside the house while Bowser stayed in the car with Cooper's book bag. When Cooper returned to the car, her "book bag was wide open, [her] stuff was out, and [her] wallet was gone." Cooper had owned the wallet for a couple of months, and it had "like $500" inside.

Bowser told Cooper to look for the wallet where she was sitting. Cooper looked inside and around the car but did not find the wallet. Canceling the trip to the beach, she then took the rest of her things inside her house, and Bowser left. Cooper searched her house for the wallet but did not find it. When asked on cross-examination why she looked around the house if the wallet was in her book bag, she testified that she was "sure" she left the wallet in her book bag but also "looked to make sure that [she] didn't misplace it anywhere else."

Cooper testified that Bowser "said that she had the wallet when [Cooper] called her" a few days later. Cooper also testified, however, that it was actually her mother, Shala Cooper-Bowser, who spoke with Bowser on the phone. It is unclear whether Cooper was testifying about a single telephone conversation or separate conversations.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Cooper-Bowser testified that Cooper told her that Bowser had promised to return the wallet, to which Bowser objected on hearsay grounds.[2] Cooper-Bowser testified that she "told [Bowser] we were going to come to her to pick the wallet up" and Bowser responded that her "wife was looking for the wallet at her house." Additionally, Cooper-Bowser testified that Bowser told her that she "had the wallet at her home, she put it up, and . . . she was going to drop it off." Cooper-Bowser did not remember what day she spoke with Bowser. She drove to Bowser's house to pick up the wallet. Bowser's wife, Tarshi Scott-Brown, was present but Bowser was not. Scott-Brown let Cooper-Bowser search the house for the wallet, but the search was unsuccessful.

Cooper-Bowser further testified on direct examination that she spoke with Bowser the day she searched Bowser's house and that Bowser stated that "when she was done running her errands . . . she would come to the house to give [Cooper-Bowser] the wallet."[3] Cooper-Bowser testified that she went to Bowser's house a second time when Bowser was not there. Bowser claimed to be at her grandmother's house and promised Cooper-Bowser that "[w]hen she was done at her grandmother's house, she was going to come and give [Cooper-Bowser] the wallet." The wallet and money have never been recovered.

Bowser denied that she took the wallet. She also denied ever admitting that she had the wallet. She further denied that there was a book bag in the car. According to Bowser, she was in the emergency room on July 15, when she "was called . . . about the wallet." Bowser responded to the caller that she would ask Scott-Brown to look for the wallet. Bowser was in the

---

[2] The trial court appears to have sustained Bowser's hearsay objection but did not make its ruling explicit. Bowser objected, the trial court stated, "[u]nderstood" and then instructed Cooper-Bowser to "without telling us what other people said . . . just tell us what you did."

[3] This appears to be a separate and later conversation than that previously recited, though Cooper-Bowser's testimony did not establish a clear timeline.

emergency room again on July 20 and testified that, when she returned home, "everyone [wa]s at [her] house searching for a wallet that [wa]s not there."

Scott-Brown testified that she learned about the missing wallet on July 14 when "someone" told her it was in her house. She searched for the wallet on July 14 and 15 but "[t]here was no wallet in [her] house at all."

Bowser argued in closing that her testimony was more credible than that of the Commonwealth's witnesses and explained that "this is a case of credibility. It's who you believe." The trial court agreed that the case rested on credibility but found the Commonwealth's witnesses more credible. The court noted "a clear contrast in the demeanor of" the witnesses; while "[t]he Commonwealth's witnesses both were very calm and straightforward in their testimony" and provided testimony that "interlocked in many respects" and "provid[ed] great detail," Bowser "was shaking [and] was so angry" and provided only "a blanket denial coupled with a combative attitude." The trial court concluded that it "c[ould not] place any weight" on Bowser's testimony. It then announced that "[t]he Court does find that the evidence has been established beyond a reasonable doubt, finds the defendant guilty."

Bowser informed the court that she had one prior conviction for failure to appear in 2005 for which she served 30 days in jail with 20 days suspended. She then asked the court to consider "allow[ing] her some opportunities to keep this off of her record" due to her lack of a significant criminal history and the adverse effect a conviction would have on her employment. She promised to pay restitution to Cooper. The court denied her request and sentenced her to 6 months in jail with 5 months suspended, to be served on the weekends, and $500 in restitution. Bowser appeals.

ANALYSIS

I. Sufficiency of the Evidence

Bowser first argues on appeal that the evidence was insufficient to support her conviction. She does not challenge the trial court's credibility determinations but instead argues that the testimony of the Commonwealth's witnesses proved at most "the opportunity to commit a larceny." "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Larceny of property with a value of less than $1,000 is a Class 1 misdemeanor. Code § 18.2-96(2). Larceny is a common law crime defined as "the wrongful or fraudulent taking of another's property without h[er] permission and with the intent to deprive the owner of that property permanently." *Pijor v. Commonwealth*, 294 Va. 502, 509 (2017) (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)).

We disagree with Bowser that the Commonwealth proved only that she had the opportunity to commit the crime. Although the timeline is far from clear, Cooper and Cooper-Bowser each testified that Bowser admitted that she possessed the wallet but never returned it. Bowser denied making such an admission, but the trial court placed no weight on her

testimony and instead credited the testimony of the Commonwealth's witnesses based in part on the witnesses' demeanor, which this Court did not have the opportunity to observe. *See Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) ("[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015))). Moreover, Cooper's testimony established that the wallet went missing during a short window of time—the time it took Cooper to go inside the house and look for swimming trunks—when nobody but Bowser had access to the wallet. *See Johnson v. Commonwealth*, 15 Va. App. 73, 75-76 (1992) (upholding the defendant's convictions for burglary and larceny of three apartments when the evidence showed that only the defendant and one other person had access to those apartments), *aff'd*, 248 Va. 444 (1994); *Toler v. Commonwealth*, 188 Va. 774, 777-79, 784 (1949) (upholding the defendant's conviction for larceny when the evidence showed that the larceny occurred within a 30-minute window, and during that window, the defendant was the only person seen in the area where the larceny occurred). Based on this evidence, a reasonable fact finder could conclude that Bowser stole Cooper's wallet with the intent to deprive her of its possession and that she was guilty of petit larceny.

## II. Deferred Disposition

Bowser next argues that the trial court abused its discretion by denying her request to defer disposition under Code § 19.2-303.2. Even assuming without deciding that Bowser's request that the court "allow her some opportunities to keep this off her record" adequately preserved this issue for appellate review, the trial court lacked authority to defer disposition.

"[U]nder well-established principles, an issue of statutory interpretation is a pure question of law which [this Court] review[s] de novo." *Green v. Commonwealth*, 75 Va. App. 69, 76

(2022) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "[C]ourts apply the plain language of a statute unless the terms are ambiguous or unless applying the plain language would lead to an absurd result." *Emmanuel Worship Ctr. v. City of Petersburg*, 300 Va. 393, 405 (2022) (internal citation omitted).

In *Hernandez v. Commonwealth*, 281 Va. 222, 226 (2011), our Supreme Court explained that, until the trial court enters a final judgment of guilt, it "has the inherent authority to take the matter under advisement or to continue the case for disposition at a later date." "An observation by the court as to the sufficiency of the evidence does not amount to a formal adjudication of guilt." *Id.*

In *Lewis v. Commonwealth*, 295 Va. 454, 464 (2018), however, the Supreme Court distinguished *Hernandez* and held that the trial court entered a final judgment of guilt when it pronounced that "the evidence is clear and *I do find [the defendant] guilty* of assault and battery," notwithstanding that the trial court had not yet entered a written order. This is so because "the oral pronouncement itself is the judgment of conviction." *Vandyke v. Commonwealth*, 71 Va. App. 723, 734 (2020) (citing *Lewis*, 295 Va. at 466). As the Supreme Court explained, "[t]he defining moment" in assessing whether a court possesses the "inherent authority to defer disposition . . . is when it adjudicates that the defendant is guilty of the specific charge." *Lewis*, 295 Va. at 466.

Most recently, this Court decided *Vandyke*, in which the defendant requested a deferred disposition under either the trial court's inherent authority or Code § 18.2-258.1(H). *Vandyke*, 71 Va. App. at 727. Under Code § 18.2-258.1, when a defendant who meets certain enumerated statutory requirements "pleads guilty to or enters a plea of not guilty to the court for violating this section, upon such plea if the facts found by the court *would justify a finding of guilt*, the court may place him on probation upon terms and conditions." Code § 18.2-258.1(H) (emphasis

-7-

added).  We explained that it was "[i]mplicit" in the statute that "the court has the discretion to permit a deferred disposition *if* it finds that the facts 'would justify a finding of guilt' *but has not yet actually pronounced the defendant guilty on those facts*."  *Vandyke*, 71 Va. App. at 733.  Because the trial court had already "f[ound the defendant] guilty as charged" before she requested a deferred disposition, we held that the trial court lacked the authority to make such a deferral.  *Id.* at 727, 736.

Code § 19.2-303.2 provides that

> [w]henever any person who has not previously been convicted of any felony, or has not previously had a proceeding against h[er] for violation of such an offense dismissed as provided in this section, pleads guilty to or enters a plea of not guilty to any crime against property constituting a misdemeanor, under Article 3 ([Code] [§]§ 18.2-95 [to -110]) . . . the court, upon such plea if the facts found by the court would justify a finding of guilt, *without entering a judgment of guilt* and with the consent of the accused, may defer further proceedings and place h[er] on probation subject to terms and conditions.

(Emphasis added.)  Code § 19.2-303.2 is even clearer than Code § 18.2-258.1(H).[4]  It allows the trial court to defer disposition "without entering a judgment of guilt."  Code § 19.2-303.2.

Here, before Bowser asked the trial court to consider giving her an opportunity to keep the conviction off her record, the court pronounced not only that it "f[ou]nd that the evidence ha[d] been established beyond a reasonable doubt" but also that it "f[ound] the defendant guilty."  *Lewis* and *Vandyke* make clear that the court's pronouncement constituted a judgment of conviction.  "'[O]nce . . . [the] judgment of conviction' has been entered, 'the question of the penalty to be imposed is entirely within the province of the legislature, and the court has no

---

[4] In arguing that the trial court could defer disposition under Code § 18.2-258.1(H) even after entering a judgment of guilt, the defendant in *Vandyke* argued that Code § 18.2-258.1(H) lacked the language in Code § 19.2-303.2 that more clearly precludes a deferred disposition after a judgment of guilt.  71 Va. App. at 733.

inherent authority to depart from the range of punishment legislatively prescribed.'" *Vandyke*,

71 Va. App. at 735 (second and third alterations in original) (quoting *Lewis*, 295 Va. at 464-65).

Accordingly, Bowser's request for a deferred disposition came too late, and the trial court,

lacking the authority to grant the request, did not abuse its discretion by denying it.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<em>Affirmed.</em>