COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Annunziata and Bumgardner
Argued at Salem, Virginia


GARY EUGENE ROBERTSON
                                              OPINION BY
v.    Record No. 0761-99-3         JUDGE SAM W. COLEMAN III
                                            MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Robert P. Doherty, Jr., Judge

           S. Jane Chittom, Appellate Counsel (Elwood
           Earl Sanders, Jr.; Public Defender
           Commission, on briefs), for appellant.

           (Mark L. Earley, Attorney General; John H.
           McLees, Jr., Assistant Attorney General, on
           brief), for appellee.  Appellee submitting on
           brief.


     Gary Eugene Robertson was convicted in a bench trial of

statutory burglary in violation of Code § 18.2-91, malicious

wounding in violation of Code § 18.2-51, and aggravated malicious

wounding in violation of Code § 18.2-51.2.  On appeal, Robertson

argues the evidence is insufficient to support his convictions.

We disagree and affirm the convictions.

                            BACKGROUND

     Viewed in the light most favorable to the Commonwealth, the

evidence established that on June 21, 1998, at approximately

5:00 a.m., Robertson entered the home of Mary Jane Jackson.  Soon

after entering, Robertson proceeded to the second floor of the

residence and entered Jackson's bedroom. Jackson and a male companion, Silvio Thomasson, were asleep in bed. Robertson dragged Thomasson out of bed and onto the floor, hitting Thomasson with an object about the head and neck. Jackson was awakened by the commotion. She screamed for her children, who were downstairs, to call the police. Robertson accused Jackson of having an intimate relationship with Thomasson while Robertson and Jackson were dating. Robertson then picked up a bottle and threw it at Jackson, hitting her in the eye. The bottle shattered and glass was embedded in Jackson's eye. Jackson's eye had to be surgically removed.

According to the police officer who was called to the scene, there were no signs of forced entry to the residence. However, when Jackson returned home from the hospital, approximately a week after the incident, she noticed that the back door had been "kicked in."

Prior to the incident, Jackson and Robertson had dated for nearly five and one-half years. During part of that time, Robertson lived with Jackson in her home. Jackson testified that she did not give Robertson a key to the residence, but she stated that Robertson may have taken one of her children's keys. Jackson testified that she ended the relationship with Robertson three weeks before the incident. After ending the relationship, but before the incident, Jackson visited Robertson at a rehabilitation

center where he was living.  At the time Jackson ended the relationship, she told Robertson he was not welcome in her home.

Robertson testified that the evening before the incident, he and Jackson had gone out to dinner and had sex in Jackson's car. Robertson denied that their relationship had ended three weeks earlier.  According to Robertson, the couple agreed that Robertson would not stay at Jackson's home for a couple of days and agreed to give each other "some space."  Robertson said Jackson had given him a key to her home and he was never told he was unwelcome.  He stated that on the morning of the incident, he awoke at approximately 3:30 or 4:00 a.m. and walked to Jackson's home several blocks away to "talk" about their relationship.  He testified that he let himself in with his key, made himself a sandwich, and proceeded upstairs to Jackson's bedroom.  Robertson stated that he observed Jackson having sex with Thomasson and became enraged.  Robertson admitted he beat Thomasson, but he was unable to remember the rest of the incident.  Sometime in the week following the incident, Robertson telephoned Jackson and left a message on her answering machine, apologizing for what he had done to her.

### ANALYSIS

On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable

inferences fairly deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986).

## A.  Statutory Burglary

Intent may be shown by the circumstances, including a person's conduct and statements.  See Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977); Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).  "[T]he reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).  "The fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts."  See Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991).

Robertson argues the evidence failed to prove that when he entered the residence he did so with the intent to commit malicious wounding.  He also argues the evidence was insufficient to support his conviction because the Commonwealth failed to prove, and the evidence fails to support, that he broke into the

- 4 -

residence or entered the residence in the nighttime.  He further

maintains he entered the residence under a claim of right.

To sustain a conviction for statutory burglary under Code

§ 18.2-91, the Commonwealth must prove:  (1) the accused entered a

dwelling house in the nighttime without breaking or broke and

entered the dwelling house in the daytime; and (2) the accused

entered with the intent to commit any felony other than murder,

rape, robbery or arson.  See Code §§ 18.2-90, 18.2-91.

Here, by Robertson's admission, he entered Jackson's

residence at approximately 5:00 a.m.  He argues he did not break

and enter the residence because he had a key to the residence

and believed he had the right to enter the residence because he

recently cohabited there with Jackson.

As Robertson notes, the Commonwealth failed to prove that

Robertson's entry at 5:00 a.m. occurred in the day or evening.

See Ryan v. Commonwealth, 219 Va. 439, 247 S.E.2d 698 (1978).

Assuming Robertson entered the residence during the day with a

key, as he contends, his entry was an unlawful breaking under

Code § 18.2-91 because Robertson used force to effect the entry

and was not authorized to enter the dwelling house.

> Actual breaking involves the application of
> some force, slight though it may be, whereby
> the entrance is effected.  Merely pushing
> open a door, turning the key, lifting the
> latch, or resort to other slight physical
> force is sufficient to constitute this
> element of the crime. . . . But a breaking,
> either actual or constructive, to support a

- 5 -

> conviction of burglary, must have resulted
> in an entrance contrary to the will of the
> occupier of the house.

Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922) (emphasis added).

Jackson testified that Robertson no longer lived with her and told Robertson he was not welcome in her home. She stated that she never gave Robertson a key and that, if Robertson had a key, he acquired it without her permission or knowledge. Jackson testified that she secured all of the doors and windows before going to bed that evening. The trial court acted within its purview as fact finder in accepting Jackson's testimony and rejecting Robertson's testimony. "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Assuming Robertson used a key to unlock the door and gain access to the residence, his actions, nonetheless, constitute a breaking. See Johnson v. Commonwealth, 15 Va. App. 73, 76, 422 S.E.2d 593, 594-95 (1992) (finding evidence sufficient to support conviction for statutory burglary where defendant used pass key to obtain entry into victims' apartments). By Robertson's admission, he entered the residence through the closed front door; he necessarily used force, however slight, to enter the residence. See Phoung v. Commonwealth, 15 Va. App. 457, 460-61, 424 S.E.2d

712, 714 (1992) (finding slight force used to open door already partially open sufficient to constitute breaking).

In a prosecution for statutory burglary under Code § 18.2-91, proof that the accused unlawfully entered another's dwelling supports an inference that the entry was made for an unlawful purpose. See Black v. Commonwealth, 222 Va. 838, 840, 284 S.E.2d 608, 609 (1981). The specific intent with which the unlawful entry is made may be inferred from the surrounding facts and circumstances. See Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984).

Here, the evidence proved that Jackson had ended her relationship with Robertson just weeks before the incident. The evidence also proved that Robertson entered the residence without Jackson's permission during the early morning hours, and, once inside, he severely injured Jackson and Thomasson. Robertson accused Jackson of infidelity with Thomasson at the scene and days later when he left a message on her answering machine. On the answering machine tape, Robertson stated he was not sorry for what he had done to Thomasson; he also said he knew Jackson had been unfaithful to him. Based on Robertson's actions and statements during and after the incident, the fact finder could reasonably conclude that Robertson broke and entered Jackson's residence with the intent to assault Jackson and Thomasson.

## B.  Malicious Wounding

Robertson also contends the evidence was insufficient to prove he acted with malice in wounding Thomasson.  Robertson contends the evidence only proved he acted in the "heat of passion" when he discovered Jackson's infidelity.

To support a conviction for malicious wounding under Code § 18.2-51, the Commonwealth must prove that the defendant inflicted the victim's injuries "maliciously and with the intent to maim, disfigure, disable or kill."  Campbell v. Commonwealth, 12 Va. App. 476, 483, 405 S.E.2d 1, 4 (1991) (en banc).  "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.  It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury.'"  Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (citations omitted).  "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation."  Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).  Whether malice existed is a question for the fact finder.  See id.  "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice."  Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986).  "In order to determine

whether the accused acted in the heat of passion, it is necessary to consider the nature and degree of provocation as well as the manner in which it was resisted."  Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).

Proof of Robertson's unlawful entry of Jackson's residence in the early morning hours after he was informed that he was unwelcome in her home supports an inference that Robertson acted with a formed design.  Moreover, because the entry was both unlawful and planned, it supports an inference that the assault which was perpetrated on both Jackson and Thomasson was purposeful.  The fact finder was not required to accept Robertson's contention that he acted in the heat of passion after finding Jackson engaged in sexual intercourse with Thomasson.  See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).  We are aware of no case allowing an aggressor to assert a claim of heat of passion for assaulting someone engaged in a sexual encounter with a former girlfriend or someone other than a spouse.  Cf. Belton v. Commonwealth, 200 Va. 5, 104 S.E.2d 1 (1958) (noting that defendant's knowledge of spouse's infidelity may constitute adequate provocation to negate a finding of malice); Hannah v. Commonwealth, 153 Va. 863, 149 S.E. 419 (1929) (same).  Accordingly, we find the evidence sufficient to support the finding that Robertson acted with malice.

## C.  Aggravated Malicious Wounding

Finally, Robertson argues the Commonwealth failed to prove he acted maliciously when he threw the bottle at Jackson.  He again asserts that he acted in the heat of passion.

Code § 18.2-51.2 provides:

> [i]f any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

The Commonwealth had the burden of establishing, beyond a reasonable doubt, that in striking Jackson with the bottle, Robertson acted with malice.  See Code § 18.2-51.2; Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984).

Here, the fact finder could reasonably have found from the evidence that, in striking Jackson with the bottle, Robertson acted with malice.  The evidence showed that Robertson unlawfully entered Jackson's residence and proceeded to her bedroom, where he began his assault on Thomasson.  After accusing Jackson of infidelity, Robertson stood a short distance in front of Jackson and threw the bottle toward her head.  Again, no case or sound reasoning supports a claim that an aggressor acts in the heat of passion where the person engaged in sexual intercourse is not a spouse but a former girlfriend.  The fact finder could reasonably

infer that Robertson acted with malice in striking Jackson with the bottle.

Because the evidence was sufficient, we affirm Robertson's convictions.

Affirmed.
