COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


MICHAEL RAY WILKERSON

                                     MEMORANDUM OPINION* BY
v.    Record No. 0085-00-2           JUDGE SAM W. COLEMAN III
                                          FEBRUARY 13, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Herbert C. Gill, Jr., Judge

          Linwood T. Wells, III, for appellant.

          Shelly R. James, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Michael Ray Wilkerson was convicted in a bench trial of

malicious wounding, maliciously shooting into an occupied vehicle,

discharging a firearm from a vehicle, and use of a firearm during

the commission of a felony.  On appeal, Wilkerson, who was

indigent, argues that the trial court erred by refusing to appoint

a mental health expert at the Commonwealth's expense to evaluate

him and to testify about his mental state at the time he committed

the offense.  He contends that he was entitled to develop that

evidence in order to prove that he acted in the heat of passion,

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

thereby negating that he acted with malice.  Finding no error, we affirm the trial court's decision.

## BACKGROUND

The shooting that led to the charges against Wilkerson arose out of a romantic relationship between Wilkerson and Christa Minnicino and Minnicino's involvement with the victim, Jeremy Wallen.  For approximately ten months prior to the shooting, Wilkerson and Minnicino had been involved in an "on again-off again" relationship.  According to Wilkerson, when he was released from jail four days before the shooting, he learned that Minnicino was intimately involved with Wallen.

On the day of the shooting, Minnicino picked up Wallen and another friend, Reno, at the local YMCA.  Minnicino was driving, Reno was in the front passenger seat, and Wallen was seated behind Minnicino.  While they were traveling down the road, Wilkerson came upon Minnicino and drove up beside her car.  Wilkerson was driving his friend Jason Jackson's car, and Jackson was seated in the passenger's seat.  Wilkerson told Minnicino to pull over because Wilkerson wanted to "kick Jeremy's butt."  A car chase ensued during which Minnicino ran a red light trying to evade Wilkerson.  Wilkerson drove Jackson's car in front of Minnicino's car and slammed on the brakes, causing Minnicino's vehicle to hit Jackson's vehicle.  Nevertheless, Minnicino was able to continue driving.  Wilkerson then pulled Jackson's car up beside

Minnicino's car and fired a shot into her car, striking Wallen. Wilkerson then held the gun to his own head and screamed to Minnicino, "If you don't pull over, I'm going to kill myself." Minnicino drove to the police station and reported the incident.

Jackson testified that when Wilkerson saw Minnicino and Wallen in the vehicle, Wilkerson "just went crazy." During the entire chase, Wilkerson was driving erratically, trying to get Minnicino to pull over. After the shooting, Wilkerson told Jackson that he was not trying to hurt Minnicino, but he wanted "to get Jeremy." Jackson testified that he never saw Wilkerson point the gun at his own head and that he did not give Wilkerson the gun.

Wilkerson was apprehended at a local motel a short time after the shooting. When arrested, he asked the arresting officer, "Have you ever loved somebody so much that you would do anything for them?" Wilkerson then recounted the details of the offense for the officer. He related to the officer that he had encountered Minnicino and Wallen while driving down the street and he told them to pull over so that he could "beat the guy's ass." When Minnicino would not stop, "a shot was fired." Wilkerson told the officer that he did not realize that he was shooting Wallen until after the shot had been fired. Wilkerson told the officer that he was "blinded with madness."

Wilkerson testified that he had previously attempted to commit suicide on three occasions because of problems in his relationship with Minnicino. He stated that he had not obtained the gun in anticipation of an encounter with Minnicino and Wallen and that Jackson had provided him the gun just before the shooting. Wilkerson testified that he did not remember the shooting because he "blacked out." He admitted that he threatened to "beat up" Wallen, but stated that at the time of the threat, he did not possess the gun.

Prior to trial, clinical psychologist Leigh Hagan, Ph.D., was appointed to examine Wilkerson and to provide evidence as to whether Wilkerson was competent to stand trial and whether he was sane at the time he committed the offenses. Hagan opined that Wilkerson was sane at the time he committed the offenses, stating that, although Wilkerson suffered "substantial mental disorders including cocaine addiction, acute cocaine intoxication and intermittent explosive disorder," those disorders "did not likely cause him to fail to appreciate the nature, character and consequence of his actions." Wilkerson's "emotional and drug problems did not deprive him of the power to conform his behavior to the requirements of the law." Hagan further opined that Wilkerson was competent to stand trial, stating that Wilkerson "does not exhibit any signs of loss of touch with reality. There is no report of, nor demonstration of, hallucinations or

delusions. There is indication of jealousy which probably compromises his judgment, but this does not rise to the level of psychotic thought disorder." The trial court ruled that Wilkerson was competent to stand trial and that the evidence did not support an insanity defense. Wilkerson does not challenge those rulings.

However, based on the "Additional Considerations" set forth in Hagan's report, Wilkerson filed a motion requesting the trial court to appoint Hagan to further evaluate Wilkerson's mental state at the time of the offense, as it had a bearing upon his mental capacity to act with malice. In his report, Hagan stated, inter alia, that:

> [Wilkerson] was overwrought with jealousy upon hearing that Krista was seeing someone else during the time that [he] was locked up prior to this alleged offense. . . . He likely flew into a rage upon seeing Jeremy together with Krista. . . . [Wilkerson's] behavior in this episode with Krista is consistent with his pattern of rage followed by endangerment to himself and others. His conduct in the shooting was not the product of a cool, calculated plan.

Wilkerson argued that Hagan's report supported his contention that he did not act with malice, but instead acted under heat of passion when he shot Wallen. He contended that a second evaluation was warranted in order for Hagan to "finish what he's already started and come to the court to testify that on the day in question that because of [Wilkerson's] unique background . . . [the circumstances of his background] would have affected

his mood and affected the circumstances and that he acted under the heat of passion."  The trial court denied the motion.

On appeal, Wilkerson asserts that the trial court abused its discretion by failing to appoint Hagan to conduct a second evaluation and to testify at the guilt phase of the trial about that evaluation.  He contends that the court should have appointed Hagan to further evaluate him to determine whether he had formed or could have formed a malicious intent when he shot Wallen, or whether he had acted in the heat of passion.  He argues that the expert testimony would address his perception of the events at the time he committed the offense, "formulate and bolster" his heat of passion defense, and give credibility to his testimony and theory of the case.

### ANALYSIS

The Due Process Clause of the Constitution guarantees an indigent criminal defendant "'the basic tools of an adequate defense or appeal.'"  Downing v. Commonwealth, 26 Va. App. 717, 723-24, 496 S.E.2d 164, 167 (1998) (quoting Ake v. Oklahoma, 470 U.S. 68, 77 (1985) (other citation omitted)).

> [W]hen a defendant demonstrates to the trial
> judge that his sanity at the time of the
> offense is to be a significant factor at
> trial, the State must, at a minimum, assure
> the defendant access to a competent
> psychiatrist who will conduct an appropriate
> examination and assist in evaluation,

- 6 -

preparation, and presentation of the defense.

Ake, 470 U.S. at 83. However,

an indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute. . . . [A]n indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is "likely to be a significant factor in his defense[]" and that he will be prejudiced by the lack of expert assistance. An indigent defendant may satisfy this burden by demonstrating that the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a fundamentally unfair trial.

Husske v. Commonwealth, 252 Va. 203, 211-12, 476 S.E.2d 920, 925 (1996) (quoting Ake, 470 U.S. at 82-83). Furthermore, the admissibility of expert testimony lies within the sound discretion of the trial court and will not be disturbed unless plainly wrong or without evidence to support it. See Downing, 26 Va. App. at 723, 496 S.E.2d at 167.

The fact that an accused may be considered by mental health standards to be below normal intelligence or to have behavioral or emotional problems or to be of diminished mental capacity is not a defense in Virginia to criminal conduct, and evidence as to a defendant's mental state, other than insanity, is immaterial to negate or disprove specific intent. See Stamper v. Commonwealth, 228 Va. 707, 716-17, 324 S.E.2d 682, 688 (1985)

(stating that "there is no sliding scale of insanity" as a defense in Virginia); see also Smith v. Commonwealth, 239 Va. 243, 258-60, 389 S.E.2d 871, 879-80 (1990) (holding that psychiatric evidence, in a capital murder case, that defendant had the ability to form intentions and to premeditate, but that he did not have the capacity to follow through with his intentions was inadmissible). "Unless an accused contends that he was beyond the [borderline of insanity] when he acted, his mental state is immaterial to the issue of specific intent." Stamper, 228 Va. at 717, 324 S.E.2d at 688. "Without evidence to establish a defense, expert opinion in aid of it [is] properly excluded." Peeples v. Commonwealth, 30 Va. App. 626, 635, 519 S.E.2d 382, 386 (1999) (en banc) (finding that the trial court properly refused to admit expert evidence that defendant suffered a mental disability that rendered him vulnerable to misunderstanding a social situation under the facts of that case because the evidence, in the light most favorable to the defendant, did not establish a defense for which he offered it).

The facts of this case do not support a finding that Wilkerson acted without malice because he acted in the heat of passion. The fact that Wilkerson may have become angry or enraged when he saw his former girlfriend driving a car occupied by her current boyfriend is legally insufficient to establish

- 8 -

heat of passion and mitigate proof of malice.  See, e.g., Belton v. Commonwealth, 200 Va. 5, 104 S.E.2d 1 (1958) (noting that defendant's knowledge of spouse's infidelity may constitute adequate provocation to negate finding of malice).  But cf. Robertson v. Commonwealth, 31 Va. App. 814, 823-24, 525 S.E.2d 640, 645 (2000).  In Robertson, we affirmed the conviction for malicious wounding where the defendant, after unlawfully entering his ex-girlfriend's house in the early morning hours, dragged her paramour out of bed and repeatedly beat him with an object.  We stated, "We are aware of no case allowing an aggressor to assert a claim of heat of passion for assaulting someone engaged in a sexual encounter with a former girlfriend or someone other than a spouse."  Id.  The circumstances in the present case are less compelling than those in Robertson.  An aggressor cannot assert a claim of heat of passion for shooting his former girlfriend's new paramour merely because he observes the two riding together in an automobile.  The facts are legally insufficient to establish that Wilkerson was reasonably provoked.  See Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 515 (1998) (finding that in order to maintain a heat-of-passion defense, the defendant must prove that he committed the crime with "passion" and upon "reasonable provocation").  Wilkerson, therefore, is unable to show that the evidence likely would have been "a significant factor in his

defense" or that he was prejudiced by the trial court's refusal to appoint Hagan to conduct a further evaluation or to appoint him to testify at trial regarding Wilkerson's mental state at the time of the offense.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>