COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


DAVID WAYNE MURPHY

                                  MEMORANDUM OPINION[*] BY
v.    Record No. 1198-01-2       JUDGE JEAN HARRISON CLEMENTS
                                         JULY 23, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                       James A. Luke, Judge

            (Jacqueline R. Waymack; Butterworth &
            Waymack, on brief), for appellant.
            Appellant submitting on brief.

            Amy L. Marshall, Assistant Attorney General
            (Randolph A. Beales, Attorney General, on
            brief), for appellee.


     David Wayne Murphy was convicted in a bench trial of

statutory burglary in violation of Code § 18.2-91 and grand

larceny in violation of Code § 18.2-95.  On appeal, he contends

the evidence was insufficient to sustain the convictions.  Finding

the evidence insufficient to convict Murphy of statutory burglary

and sufficient to convict him of grand larceny, we reverse in part

and affirm in part the judgment of the trial court.

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

value, this opinion recites only those facts and incidents of the

_____
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

proceedings as necessary to the parties' understanding of the disposition of this appeal.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1997).  "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998).  We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination."  Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999).  We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence.  Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

Murphy first contends the evidence was insufficient to convict him of statutory burglary because it failed to establish the essential element of "breaking."  Specifically, Murphy argues the evidence did not prove beyond a reasonable doubt that he gained access to the Ahepa Center by the use of force or that his entry into the Ahepa Center was without permission.

-

The indictment charged Murphy with breaking and entering "the Ahepa Center" in violation of Code § 18.2-91.  Thus, to sustain a conviction under Code § 18.2-91, the Commonwealth had to prove beyond a reasonable doubt, inter alia, that Murphy broke and entered the Ahepa Center.

> "Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected.  Merely pushing open a door, turning the key, lifting the latch or resort to other slight physical force is sufficient to constitute this element of the crime. . . .  But a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the [premises]."

Robertson v. Commonwealth, 31 Va. App. 814, 821, 525 S.E.2d 640, 644 (2000) (quoting Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922) (emphasis added)).

Viewed in the light most favorable to the Commonwealth, the evidence proved that, around 4:00 p.m. on Friday, May 5, 2001, John Trotter, Sr., accompanied by his grandchildren, went to the Ahepa Center, a community center used for many activities including bingo three days a week, to clean up after a bingo game held the previous night.  When closed, the building, which had an alarm tab, was normally accessed by using a key to unlock the door.  However, when Trotter prepared to unlock the door, he noticed the door was already unlocked.  He walked in and saw that the light in the kitchen was on.  Going into the kitchen, he observed Murphy, with whom he was familiar, walking back and forth

-

in the kitchen.  Trotter looked around the building to see if someone who might have let Murphy in was there, but saw nobody else there.  Trotter testified that he had not given Murphy permission to be in the building and that he had no such authority anyway.

Trotter then observed Murphy, who had picked up a box of food, leave the kitchen, walk past his grandchildren, and run out the side door of the Ahepa Center.  One of Trotter's grandsons chased after him for a short distance but stopped when Murphy dropped the box of food.  The box contained shrimp, chicken, and ham, valued at $65.

A subsequent examination of the kitchen revealed that the locks on the reach-in and walk-in refrigerators had been broken. Food was scattered throughout the walk-in refrigerator.

The next day, Antonio Afifantis, who ran the bingo games and concession sales at the Ahepa Center, discovered that over $600 in cash was missing from the reach-in refrigerator.  Afifantis had locked the money from Thursday night's bingo games and concession sales in the reach-in refrigerator.  Afifantis, who had the only key to that refrigerator, had not opened the refrigerator after locking the money inside or given anyone else permission to do so.

Nicholas Doukas, the executive secretary and manager of the Ahepa Center, testified that Murphy had been coming to the center for three years but that he had not given him permission "to be back in the kitchen area or to go in the refrigerator" on May 5,

-

2001.  According to him, the only people that would have permission to go back in that area were people who work there, "or members of the order, or guests of the people that are there, or if someone has permission to be back there."

When asked how many people had access to the Ahepa Center, Gary Metry, a member of the Ahepa Order and current bingo chairman, testified:  "Honestly, at this point, I cannot tell you. There are several keys, and we are having problems of accounting, who has got keys."  That problem, he testified, has "probably been in existence over several years, quite frankly."

In finding the Commonwealth's evidence sufficient to prove that Murphy broke into the Ahepa Center, the trial judge relied, in large part, upon the evidence of the damaged and broken lock of the refrigerator in the kitchen, which was, he determined, "part of the building used for safety."  However, it is a "well-settled principle that the force [necessary to constitute a breaking] must be applied to something attached to the premises and relied upon by the occupant for safety."  Johns v. Commonwealth, 10 Va. App. 283, 286-87, 392 S.E.2d 487, 489 (1990).  Here, there was no evidence that the refrigerator was attached to the premises or that the lock on it was intended to protect anything other than the contents of the refrigerator itself.  Thus, the trial court's reliance on this evidence to establish a forceful entry into the building was misplaced.

-

Moreover, we find no evidence in the record that supports the trial court's finding that Murphy was in the Ahepa Center without permission. There was no evidence of physical damage to either door to the center following Murphy's entry or that his entry had triggered the alarm. Indeed, Trotter simply found the front door unlocked when he approached the building. Furthermore, while Trotter testified that he had not given Murphy permission to enter the building, Doukas and Afifantis testified only that they had not given anyone permission to be in the kitchen or the refrigerator. Doukas further testified that anyone who worked at the Ahepa Center, "or members of the order, or guests of the people that are there, or . . . someone [who had] permission to be back there" could enter the kitchen area. Additionally, Metry could not say how many people had access to the center or who had keys to the building. Plainly, Murphy, who consistently attended the bingo games at the Ahepa Center, was well known to the members of the center, its officers, and those who worked there. It was not shown that he did not have the permission of a member or other person in authority to be in the building.

We, therefore, conclude that the evidence presented at trial failed to prove beyond a reasonable doubt that Murphy entered the Ahepa Center that day without permission. Accordingly, we hold the trial court erred in finding the evidence sufficient to convict Murphy of statutory burglary.

-

Murphy next contends the evidence was insufficient to convict him of grand larceny because he was only seen leaving the building with a box of food valued at $65. The missing cash was only linked to him because he stole the box of food, he argues.

To convict Murphy of grand larceny the Commonwealth had to prove beyond a reasonable doubt that the goods stolen by him were valued at $200 or more. See Code § 18.2-95(ii). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "However, 'the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.' Whether an alternate hypothesis of innocence is reasonable is a question of fact, and therefore, is binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997) (citation omitted) (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)).

The uncontroverted evidence of the Commonwealth proved that, on Thursday evening after bingo had concluded, Afifantis counted the monies from the concession sales and bingo proceeds and locked them in the refrigerator in the kitchen. He had the only key. On Friday afternoon, Trotter found Murphy leaving the kitchen with a box of stolen food. Trotter then saw the broken refrigerator

-

locks and food strewn all over the walk-in refrigerator.  When Afifantis examined the refrigerator and its contents the next day, the $600 in cash was missing.  We conclude that this evidence was sufficient for the trial court to reasonably infer that Murphy, who had been seen stealing the food, had also stolen the missing cash.  Johnson v. Commonwealth, 141 Va. 452, 456, 126 S.E. 5, 6-7 (1925) (holding that the unexplained exclusive possession of part of the stolen property warrants inference that thief stole all of it).  We hold, therefore, that the trial court did not err in convicting Murphy of grand larceny.

-

Accordingly, we reverse Murphy's conviction of breaking and entering and dismiss the indictment and affirm his conviction of grand larceny.

<u>Affirmed in part, and</u>
<u>reversed in part</u>.