COURT OF APPEALS OF VIRGINIA

Present:  Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia

BOSCHOBEL COX WILLIAMS, III

                                           MEMORANDUM OPINION[*] BY
v.      Record No. 1073-23-3            JUDGE MARY GRACE O'BRIEN
                                               OCTOBER 22, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

Melvin E. Williams (Meghan A. Strickler; Williams & Strickler,
PLC, on brief), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the court convicted Boschobel Cox Williams, III, (appellant) of

malicious wounding, in violation of Code § 18.2-51.  Appellant argues that the court erred by

admitting statements he made, "recordings of which were not disclosed" before trial.  He also

asserts that the court erred "in not striking impeachment evidence referenced by the

Commonwealth."  Finally, appellant contends that the evidence was insufficient to support his

conviction.  For the following reasons, we affirm.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In

doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *See Gerald*, 295 Va. at 473.

In early 2022, Olivia Walker was in a romantic relationship with appellant and often traveled from her house in North Carolina to his house in Clifton Forge. On February 26, 2022, Walker was at appellant's house, and the two began arguing. Later that day, they went out with friends for drinks. During the ride back early the next morning, appellant again became angry and repeatedly called Walker offensive names. He told his friend, who was driving the car, that he was going to kill Walker and asked his friend if he could buy a gun from him. When they returned to the house, appellant continued to berate Walker and followed her upstairs to a bedroom.

Appellant threw Walker to the bedroom floor and struck her multiple times. As she fell, Walker's head hit the corner of a table, causing a gash that required six staples to close. Appellant threw Walker onto the bed and began choking her. Eventually, appellant paused the attack and stated that he was going to call his mother. He stood by the bedroom door, and when Walker attempted to leave, he continued the attack, throwing her "like a ragdoll" onto a couch and against a closet door. Appellant repeatedly "bashed" Walker's head against the wooden staircase and threatened to kill her. Walker rolled down the stairs and fled through the front door to a neighbor's house for help.

When Officer W.D. Atkins arrived at the neighbor's house in response to a 911 call, he saw that Walker was "emotional" and "frightened" and having a "very difficult time catching her breath." Officer Atkins saw that Walker had blood on her face and in her hair. At trial, Walker testified about her ongoing injuries, which included tender, visible scars and persistent pain and weakness in her arm and shoulder. The court also viewed photographs of Walker's injuries and a bedsheet stained with her blood.

After the court denied appellant's motion to strike at the conclusion of the Commonwealth's case, he presented evidence on his behalf. Appellant called Kevin Vanness to testify "for impeachment purposes." Vanness testified that he was "lifelong friends" with appellant and that Walker called him the day after the incident. He described Walker as "upset" and "frantic," but he claimed she said that "she felt like a lot of it was her fault."

Appellant denied making derogatory comments about Walker during the drive home and claimed that she threw a "putty knife" at him during their argument. He admitted throwing Walker onto a couch but stated he did so to avoid falling down the stairs. He saw her run from the house but claimed he did not know how she received her injuries. According to appellant, after Walker left, he called his mother and then went to bed. Appellant said he did not know how the bedsheet became bloodied, but he stated that he had a scratch on his back. He further asserted that a red substance the police found next to the bedroom table was "Kool-Aid" and "definitely not a pool of blood."

When asked on cross-examination if "the blood on that sheet is yours," appellant replied that "it has to be." The Commonwealth then asked, "Would it surprise you" that when "that stain was tested that it came back as blood from Olivia Walker?" Appellant objected, arguing that a blood test result was "not a fact in evidence." The court overruled the objection, finding that the question was "proper cross-examination." Appellant repeated that he was bleeding that night and stopped his blood with the sheet. The Commonwealth also asked appellant if he would be surprised that the stain on the floor tested positive for Walker's blood, and he responded that he would be surprised.

The Commonwealth next cross-examined appellant about statements he made during the drive back to his house before the incident. Appellant stated that the "car ride was quiet" and that Walker sent him text messages during the drive. Appellant denied saying that he planned to kill

- 3 -

Walker. When the Commonwealth asked, "Would it surprise you if there is a video of that entire car ride [that] does show you saying those things," appellant responded, "[I]t sure would."

The Commonwealth called Walker in rebuttal. She testified that she used her cell phone to record appellant's statement that he was going to kill her, and she offered the recording. The court sustained appellant's objection and excluded the recording because it had not been provided to the defense during discovery.

The court found Walker "extremely credible," rejected appellant's version of the events, and convicted him of malicious wounding.

## ANALYSIS

### Evidentiary Rulings (Assignments of Error 1 and 2)

Appellant argues that the court erred by "considering" and "not striking" statements he made because the cell phone recording of them was "not disclosed" during discovery. Although appellant acknowledges that the court excluded the recording, he nevertheless claims that the court improperly "relied upon [his] statements made during the time the video allegedly recorded him as evidence of malice." Appellant further argues that the court erred by "not striking impeachment evidence referenced by the Commonwealth that it failed to prove up." Specifically, he asserts that the Commonwealth should not have been allowed to refer to the cell phone recording or to blood test DNA results in its cross-examination questions, because this evidence was not admitted.

"[T]he admissibility of evidence is within the discretion of the trial court[,] and we will not reject the decision of the trial court unless we find an abuse of discretion." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 44 (2019) (first alteration in original) (quoting *Midkiff v. Commonwealth*, 280 Va. 216, 219 (2010)). Likewise, the "determination of the scope of cross-examination in general," and the "extent of testimonial impeachment in particular," is "'left largely to the sound discretion of the trial court.'" *Spruill v. Commonwealth*, 221 Va. 475, 485

(1980) (quoting *Worrell v. Kinnear Co.*, 103 Va. 719, 724 (1905)). "[A]n appellate court will not interfere[] unless that discretion has been plainly abused." *Id.* (quoting *Worrell*, 103 Va. at 724).

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009).

Appellant did not object to the Commonwealth's question about the cell phone recording during cross-examination. Only when the Commonwealth sought to introduce the recording during rebuttal did appellant object, and then only to the admission of that evidence—not to the question posed during cross-examination. The court sustained appellant's objection, and the cell phone recording was not admitted. Appellant did not timely and specifically object to the cross-examination question referencing the recording, which he now challenges on appeal. Furthermore, appellant did not object when Walker testified about his recorded statements during her direct examination.

Appellant thus failed to alert the trial court to the claim he now raises—that questioning him about his recorded statements was improper. Appellant does not invoke the good cause or ends of

- 5 -

justice exceptions to Rule 5A:18, and the Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Therefore, we consider this aspect of appellant's assignment of error waived.

Appellant also asserts that the court erred by allowing the Commonwealth to ask him about DNA testing of the blood on the sheets. He argues that "[o]nce the Commonwealth failed to prove up the blood test results, then the trial court should have announced that it was not considering the line of questioning by the Commonwealth of [him] for any purpose, especially [his] credibility." Appellant insists that in finding Walker "extremely credible," the court necessarily relied on "improper lines of questioning by the Commonwealth."

During direct examination, appellant testified that the blood found on the bedsheet was his. When the Commonwealth asked during cross-examination whether appellant would be surprised to learn that the blood on the sheet was linked to Walker, the court overruled his objection. Appellant argued that the blood test was not a fact in evidence, but the court found that the question was "proper cross-examination."

Counsel's questions during cross-examination are not evidence. *See Forsyth v. Doolittle*, 120 U.S. 73, 77 (1887) (stating that counsel's questions "are not evidence; they are mere statements to these witnesses" and thus a fact finder cannot "consider the statements as facts in the case, but merely as assumptions of the party propounding the questions"). Furthermore, this was a bench trial, and a "judge . . . is uniquely suited by training, experience[,] and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." *Eckhart v. Commonwealth*, 222 Va. 213, 216 (1981). Accordingly, the court did not err in overruling appellant's objection to the cross-examination question.

Sufficiency of the Evidence (Assignment of Error 3)

Appellant next argues that the evidence was insufficient to support his conviction. Specifically, he contends the Commonwealth failed to prove that he acted with malice or the intent to maim, disfigure, disable, or kill Walker.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal[] is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"To be convicted of malicious wounding, the Commonwealth must prove that the defendant maliciously stabbed, cut, or wounded 'any person or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill.'" *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (alteration in original) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)); *see* Code § 18.2-51. Malice is an element of the offense. *Ramos*, 71 Va. App. at 162. Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Synan v. Commonwealth*, 67 Va. App. 173,

187 (2017) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000)). Malice is a question of fact and may be "directly evidenced by words" or implied by conduct. *Id.* at 187 (quoting *Robertson*, 31 Va. App. at 823). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997) (quoting *Essex v. Commonwealth*, 228 Va. 273, 281 (1984)).

"Under ordinary circumstances[,] an intent to maim may not be presumed from a blow with a bare fist. But an assault with a bare fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed." *Burkeen*, 286 Va. at 259 (quoting *Fletcher v. Commonwealth*, 209 Va. 636, 640 (1969)). "[R]epeated" blows with fists "applied to vital and delicate parts of the body of a defenseless, unresisting [person], on the ground" may support a finding of malice. *Roark v. Commonwealth*, 182 Va. 244, 250 (1944) (quoting *M'Whirt's Case*, 44 Va. (3 Gratt.) 594, 611 (1846)).

Here, after weighing the evidence, the court credited Walker's account of the attack and rejected appellant's version of the events. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], wh[o] has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018).

The evidence proved that appellant argued with Walker and expressed his intent to kill her as they drove home. Upon their arrival, appellant followed Walker to the bedroom and attacked her. He knocked her to the floor, and she sustained a significant cut to her head as she fell. It makes no difference that Walker's cut resulted from hitting her head on a table as she fell, as a fact finder may infer that a "person intends the natural and probable consequences of his or her acts." *Velasquez v. Commonwealth*, 276 Va. 326, 330 (2008). Appellant proceeded to beat and choke Walker. He dragged her by her hair and "bashed" her face into the staircase. She has scars and ongoing pain and weakness in her arm and shoulder. Appellant's statements and actions, combined with the brutality of the attack, provided the court with sufficient evidence to support its finding that appellant acted maliciously and with the requisite intent.

CONCLUSION

For these reasons, we affirm appellant's malicious wounding conviction under Code § 18.2-51.

*Affirmed.*