UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Causey, Friedman and Senior Judge Clements
Argued at Richmond, Virginia


CURTIS L. WADE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1158-23-2                JUDGE DORIS HENDERSON CAUSEY
                                                       FEBRUARY 18, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
S. Anderson Nelson, Judge

Eric Weathers, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Curtis L. Wade of assault and battery on a law enforcement officer in

violation of Code § 18.2-57(C).  The trial court sentenced Wade to five years' incarceration, with

all but seven months suspended.  On appeal, Wade argues that the trial court erred in denying his

motions to strike and to set aside the verdict because the evidence was insufficient to show that

he had the requisite intent for assault and battery.  We affirm his conviction.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On January 1, 2022, Ben Gillkin, a security officer for VCU CMH hospital, encountered Wade in the emergency waiting room of the hospital. Gillkin observed Wade "upset and kicking the door into the emergency room . . . like[] he was trying to kick it down." Another staff member called 911 to report the disturbance. Lieutenant Ryan Durham of the South Hill Police Department responded to the hospital with two other officers and spoke with Gillkin, who informed them that he wanted Wade removed from the property. Durham instructed Wade to leave, but Wade did not comply. The officers placed Wade under arrest. Durham transported Wade to the South Hill Police Department and placed him into a holding cell. At the police department, Wade encountered Officer Amanda Parker. When Wade saw Officer Parker, he began to make rude, demeaning comments directed at her.

The officers arranged for Officer Parker to drive Wade to Meherrin River Regional Jail. After the officers placed Wade in the back of Officer Parker's patrol car, she noticed that Wade had unbuckled his seat belt. Because it was the department's policy to have any transportee buckled, they removed Wade from the backseat so they could rearrange his handcuffs to prevent him from removing his seatbelt again. As the officers repositioned Wade's handcuffs, Officer Parker held onto Wade's arm to prevent him from falling. Wade "wanted [Officer Parker] to let go of his arm" and told her "three different times he was going to spit in [her] face." After the second time Wade

---

[1] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

threatened to spit on Officer Parker, she "put [her] hand on his head" and "turned him away from [her]."

During the encounter, Wade jerked away from Officer Parker multiple times, threatened to smack her, and called her a "scared ass bitch." After the officers rearranged Wade's handcuffs, Officer Parker attempted to place Wade back into her vehicle, but he refused. Officer Parker "put [her] hand on [Wade's] head to push him down to get him in the vehicle." Wade "pulled back[,] . . . and when he dropped [into the seat], he reared back and kicked [Officer Parker] in [her] knee." Wade immediately stated, "I said stop fucking touching me." Officer Parker testified that Wade used "[e]nough force to almost take [her] legs out from underneath [her]." Body worn camera footage captured the entire incident.

At the conclusion of the Commonwealth's case, Wade made a motion to strike the evidence. Wade argued that he never threatened to kick Officer Parker and that the kicking was "involuntary or uncontrolled" and not intentional. Wade asserted that when he was "forced into the squad car," it took his weight out from under him, causing his legs to flail and hit Officer Parker. He stated that the body worn camera footage reflected that he lost his balance or stumbled various times during the encounter. The trial court overruled Wade's motion.

Wade elected not to present evidence and renewed his motion to strike. He argued that the kick was accidental and not intentional. Wade again asserted that he did not have "full control of his bodily motions" and that he lost his balance and "flop[ped] back into the vehicle." The court overruled Wade's motion, stating that it was "an issue for the jury to determine whether or not [there was] intent." The jury found Wade guilty of assault and battery on a law enforcement officer.

Wade moved to set aside the verdict. He argued that the evidence "clearly show[ed] that there was physical force being applied to [him] in a way that made it . . . unlikely that the motions that were described by the Commonwealth as a kick were voluntary and intentional motions." The

trial court denied Wade's motion. It stated that the "jury inferred from the video and made the determination from the video that it was an intentional act" and that it could "certainly not disagree with that." This appeal followed.

ANALYSIS

On appeal, Wade argues that the evidence was insufficient to prove that he intended to do bodily harm to Officer Parker.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a . . . law-enforcement officer . . . such person is guilty of a Class 6 felony." Code § 18.2-57(C). "Because Code § 18.2-57 does not define assault or battery, we must look to the common law definition of the terms." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (citing *Clark v. Commonwealth*, 279 Va. 636, 641

(2010)).  "The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57."  *Id.*  "To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'"  *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)).  "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another."  *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)).  "It is not necessary that the touching 'result in injury to the [victim's] corporeal person.'"  *Id.* (alteration in original) (quoting *Wood*, 149 Va. at 405).

"Whether a touching is a battery, depends on the intent of the actor, not on the force applied."  *Id.* (quoting *Adams*, 33 Va. App. at 469).  "One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'"  *Id.* (quoting *Adams*, 33 Va. App. at 468).  "The unlawful intent may be imputed if the touching is 'done in a rude, insolent, or angry manner.'"  *Id.* at 331 (quoting *Adams*, 33 Va. App at 469).  "This intent may often be gathered from the conduct of the aggressor, viewed in the light of the attending circumstances."  *Id.* (quoting *Wood*, 149 Va. at 405).  "[C]ircumstantial evidence of intent may include the conduct and statements of the alleged offender."  *Id.* (quoting *Adams*, 33 Va. App. at 471).  Furthermore, "the 'fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts.'" *Brown v. Commonwealth*, 68 Va. App. 746, 788 (2018) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 820 (2000)).  "[W]hether the required intent exists is generally a question of fact for the trier of fact."  *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown*, 68 Va. App. at 787).

Here, the evidence showed that Wade was behaving in a disorderly manner before he kicked Officer Parker.  Wade was visibly agitated and resistant with Officer Parker, and

repeatedly threatened to spit in her face if she did not let go of him. He tried on more than one occasion to pull from Officer Parker's grasp when she was adjusting his handcuffs. Moments before Wade kicked Officer Parker, he threatened to smack her and called her a "scared ass bitch." And immediately after Wade kicked Officer Parker, he stated, "I said stop fucking touching me." The video evidence clearly corroborated the testimony and showed Wade pull his leg back and forcefully kick Officer Parker in the knee. We find that Wade's aggressive and threatening behavior supports the finding that he intended to inflict bodily harm on Officer Parker. Upon the evidence, a reasonable finder of fact could thus conclude beyond a reasonable doubt that Wade was guilty of assault and battery upon a law enforcement officer.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*