COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia

UNPUBLISHED

FERRARI ARAMIS FERDINAND

v.        Record No. 0570-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
AUGUST 1, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

Harry Dennis Harmon, Jr., for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After a jury trial, the trial court convicted Ferrari Aramis Ferdinand of second-degree

murder and use of a firearm in the commission of a felony.  On appeal, Ferdinand argues, that "[t]he

trial court erred in denying the appellant's motions to strike the charges of second-degree murder

and use of a firearm in the commission of second-degree murder or attempted commission of a

second-degree murder because the Commonwealth's evidence was insufficient to prove the

appellant acted with malice."  Ferdinand also argues that he "acted in self-defense when he shot and

killed the victim."

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Scott v.*

*Commonwealth*, 292 Va. 380, 381 (2016).  As the Supreme Court has stated, "[t]his principle

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On the night of May 29, 2019, Norfolk Police Officers Stephen West and Jordan Marksbury heard approximately "three to five" gunshots as they arrived at a bus station on a routine patrol. Officer West found Quontrell Snowden on his back, and observed that Snowden had been struck by at least one gunshot. Officer West began to treat Snowden's wound, but Snowden remained unresponsive. Norfolk Fire-Rescue Captain Priscilla Parker also arrived at the bus station and began to treat Snowden. Captain Parker identified gunshot wounds on Snowden's "right rear buttocks and on both flank areas in the rear." Despite their efforts, Captain Parker and other officials were unable to resuscitate Snowden.

At the time of the gunshots, U.S. Postal Service Special Agent Steven Scully was located at a fire station beside the bus station and was installing equipment in a Postal Service vehicle. Special Agent Scully heard "four to five gunshots" from the bus station and called 911. During the call, Special Agent Scully saw two men walking "very slow[ly] and casual[ly]" from the area where he believed the shots had been fired, which he found to be unusual. One of the men, later identified as Ferdinand, had on a white "tank top" and green-blue shorts and was carrying what Special Agent Scully believed to be a handgun. Scully saw Ferdinand put that object into a backpack and then take hold of a bicycle. Ferdinand "seemed to be sort of in a daze"—with a "glazed-over look." Special Agent Scully testified that the two men then "went out of my sight."

Within three minutes of the gunshots, Officer Marksbury encountered Ferdinand, whom she described as "wearing a white tank top and blue shorts," and "had a bike and a backpack with him."

- 2 -

Ferdinand did not appear to be trying to flee, and was cooperative. Ferdinand informed Officer Marksbury that he had a firearm with him, and he later gave the firearm to the police.

At trial, the Commonwealth presented a video from a surveillance camera at the bus station. Detective Jemal Davis, the Norfolk police detective who had investigated Snowden's death, testified that the video depicted Snowden and Ferdinand facing each other, with Snowden then moving away and removing his shirt and Ferdinand moving toward him. The video also depicted both men "in each other's face," "jostling back and forth" but not punching each other. Detective Davis testified that it was "hard to tell" who started the "chest bumping." Detective Davis further stated that he "can't tell from the video where any pocket is being grabbed." About a minute after the physical confrontation began, Snowden "beg[a]n to take steps backwards," "backing away from Mr. Ferdinand." Ferdinand then fully extended his arm, advanced toward Snowden, and fired shots. As Detective Davis testified, Ferdinand was "further than arm's reach" away by about "a foot or a foot and a half" when he fired those shots. The video next depicted Snowden falling then trying to get up. Detective Davis testified that "you can tell from the reaction of Mr. Snowden" when Ferdinand fired the shots.

The trial court qualified Dr. Elizabeth Kinnison, who performed an autopsy on Snowden, as an expert witness in forensic pathology. Dr. Kinnison testified that Snowden had seven gunshot wounds, including two that were each potentially lethal, although she could not determine in which order the bullets struck Snowden. One bullet entered Snowden's "left back side," went "through the musculature of the back" and "exited the right lower back."

Ferdinand moved to strike the evidence at the conclusion of the Commonwealth's case in chief. He argued that Snowden provoked him after an initial "quarrel" had stopped and that the evidence did not prove that he acted with malice. The trial court denied the motion to strike.

Ferdinand then testified that, while he was waiting at the bus station, someone he did not know accused him of rape, and they began arguing. Ferdinand claimed that as he walked away, that same person said that he knew Ferdinand had a gun and "[w]e keep guns around too." According to Ferdinand, he had his gun in the right pocket of his basketball shorts and an observer would have been able to see the shape of his gun, his wallet, and his cell phone bulging through the fabric of his shorts. He also claimed that Snowden said that his "sister was raped" and he was "going to kill [Ferdinand's] ass." Ferdinand believed that Snowden was "drunk or high."

Ferdinand testified that Snowden then removed his own shirt, "grabbed" Ferdinand's shorts pockets, and demanded to know what was in them. Ferdinand argued that he was afraid when Snowden took off his shirt. He claimed that they "got into a tussle," during which Snowden "grabbed [Ferdinand's] wallet" from his pocket. Ferdinand testified that he "assum[ed]" Snowden was trying to grab his gun. Ferdinand claimed that he "broke free," "pried [Snowden] off," and then "fired two shots." He denied that Snowden backed away, insisting that he had to "push [Snowden] off." Ferdinand maintained that he "was in fear for [his] life" because of Snowden's verbal threat and grabbing for his shorts pocket where his gun was located. He conceded that Snowden was "six inches shorter than [him]" but contended that Snowden "was aggressive and looked menacing." Ferdinand testified that he "did not give [Snowden] a chance to retrieve a weapon of his own," but admitted that he never saw a weapon before shooting Snowden.

In addressing why Ferdinand only "recall[ed] firing two shots" despite multiple witnesses testifying to hearing more than two shots, Ferdinand testified, "I guess the -- I'm unaware of the pressure on the hair -- of the trigger. I mean, I recall firing two shots." Ferdinand also claimed that he called 911 to report that he had shot someone.

Ferdinand testified that he told Detective Davis that he had been attacked and that Snowden had taken his wallet, but he was able to get his wallet back. He also claimed to have told Detective

Davis that Snowden threatened to kill him. Detective Davis testified in rebuttal about his interview with Ferdinand after the incident. During the interview, Detective Davis asked Ferdinand if Snowden had said anything before the physical confrontation. Ferdinand replied, "No. He just attacked . . . from the left." Ferdinand did not tell Detective Davis that Snowden said he would kill Ferdinand or that Snowden took Ferdinand's wallet. When Detective Davis asked Ferdinand how far away Snowden was, Ferdinand replied that "he pushed [Snowden] off of him, and he thought he was approximately an arm's length away" when he shot Snowden. Detective Davis also testified that there is no record of Ferdinand calling 911.[1]

At the conclusion of all the evidence, Ferdinand renewed his motion to strike. He argued that he and Snowden initially engaged in "mutual contact." However, Ferdinand claimed that the contact was "broken off" and that he "stepped back" away from Snowden. Ferdinand further claimed that after that point, "the contact continued because Mr. Snowden was the aggressor and kept approaching" and "continue[d] on with the quarrel." Therefore, Ferdinand argued that the most he could be found guilty of was voluntary manslaughter because the killing resulted from an attack by Snowden. Ferdinand contended that the evidence did not prove that his "primary motive for shooting" Snowden was malicious. Ferdinand also argued that he acted in self-defense. The trial court denied the renewed motion to strike the evidence, finding that whether Ferdinand acted in response to adequate provocation or in self-defense were questions for the jury.

After argument by counsel, the jury found Ferdinand guilty of second-degree murder and of the use of a firearm in the commission of a felony. The trial court sentenced Ferdinand to a sentence of 23 years of incarceration with 6 years suspended. Ferdinand now appeals to this Court.

---

[1] The Commonwealth introduced recordings of three calls—and transcripts showing all 911 calls made. No call by Ferdinand to 911 was among them.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

### A. Malice

Ferdinand argues that the evidence was not sufficient to prove that he acted with malice. He contends that an ample amount of evidence demonstrated that Snowden provoked him, that Ferdinand acted in the heat of passion, and therefore that Ferdinand should have been convicted of, at most, voluntary manslaughter instead of second-degree murder.

"At common law, malice was defined 'as any evil design in general: the dictate of a wicked, depraved, and malignant heart." *Flanders v. Commonwealth*, 298 Va. 345, 357 (2020) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255 (2019)); *see* 4 William Blackstone, Commentaries \*198. The Supreme Court of Virginia "has long employed a volitional definition of malice requiring that the 'wrongful act be done willfully or purposefully.'" *Flanders*, 298 Va. at 357 (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)); *see also Dawkins v.*

*Commonwealth*, 186 Va. 55, 61 (1947) (defining malice as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will").

"Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022). "Malice may exist alongside and arise from 'anger, hatred[,] and revenge' as well as any other 'unlawful and [unjustified] motive.'" *Id.* (alterations in original) (quoting *Watson-Scott*, 298 Va. at 256). "[M]alice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (quoting *Essex*, 228 Va. at 280). "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000). Furthermore, "the deliberate use of a deadly weapon" allows the factfinder to infer malice. *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

"Significantly, [m]alice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Jenkins v. Commonwealth*, 244 Va. 445, 457 (1992) (alteration in original) (internal quotation omitted). "'As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the *furor brevis* necessary to rebut the presumption of malice arising from a homicide is a question of fact' to be decided by the jury." *Dandridge v. Commonwealth*, 72 Va. App. 669, 682 (2021) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)).

Here, the video showed Snowden moving away from Ferdinand and removing his shirt while Ferdinand moved toward him. The men then engaged in some brief close physical contact and chest bumping, with no punches exchanged. The video and Detective Davis's testimony contradicted Ferdinand's testimony that he "broke free" and "push[ed]" Snowden away before

firing the gun. The video showed Snowden walking backwards away from Ferdinand, who advanced toward Snowden and repeatedly shot him.

Whether malice exists is a question of fact, *Robertson*, 31 Va. App. at 823, and here there was certainly credible evidence in the record to support the jury's implicit finding of malice. The simple fact that Ferdinand used a firearm—a deadly weapon—in these circumstances entitled the jury to infer that Ferdinand possessed the requisite malice necessary to conclude that Ferdinand was guilty of murdering Snowden. *Tizon*, 60 Va. App. at 11. Also, the jury could have found that Ferdinand acted maliciously due to the fact that he shot Snowden so many times. *See Watson-Scott*, 298 Va. at 258 ("It is patently obvious that firing multiple shots from a handgun in the middle of a populous city is the very definition of an action flowing from a 'wicked and corrupt motive, done with an evil mind and purpose and wrongful intention . . . .'" (quoting *Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946))). Considering the totality of the facts together, including that Ferdinand advanced upon Snowden and used a firearm to shoot him multiple times, including at least one time in his back (as Snowden backed away, fell to the ground, and then climbed back to his feet and tried to flee), the evidence was certainly sufficient here for the jury to infer malice. Consequently, the trial court did not err by denying Ferdinand's motions to strike the evidence.

### B. Self-Defense

Ferdinand also argues that the trial court erred by not striking the evidence because he "acted in self-defense when he shot and killed the victim." Ferdinand contends that it was impossible for him to retreat because of Snowden's apparent intoxication, his threat to kill Ferdinand, his reference to having weapons, and the "aggressive[]" "chest jostling."[2]

---

[2] Ferdinand also argues on brief that Snowden had "a prior history involving hostility." Ferdinand did not present this argument to the trial court, and therefore we cannot consider it now for the first time on appeal. Rule 5A:18; *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020).

"Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). The "defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat." *Taylor v. Commonwealth*, 77 Va. App. 149, 171 (2023) (quoting *Peeples v. Commonwealth*, 30 Va. App. 626, 634 (1999) (en banc)). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution." *Jones*, 71 Va. App. at 86 (alteration and omission in original) (quoting *Sands*, 262 Va. at 729). In addition, the "force used must be reasonable in relation to the harm threatened." *Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008) (quoting *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986).

A rational factfinder could certainly have concluded that the evidence that we now have before us on appeal does not support Ferdinand's claim that he reasonably feared that Snowden was going to kill him. During a three-day trial, Ferdinand relied on his own testimony to prove that Snowden threatened to kill him, grabbed his wallet, and tried to grab his gun. The jury was not required to accept Ferdinand's self-serving testimony—especially given all the evidence that contradicted Ferdinand's story. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving

testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). In contrast to Ferdinand's account of the incident, the surveillance video does not depict Snowden grabbing items from Ferdinand's pocket, and, in fact, Ferdinand admitted that Snowden never actually touched Ferdinand's gun and that Ferdinand never saw a weapon in Snowden's possession. In addition, both the physical evidence and the testimony of Special Agent Scully and Officers West and Marksbury contradicted Ferdinand's assertions that he fired only twice—as did Dr. Kinnison's testimony that Snowden suffered seven gunshot wounds. Furthermore, Detective Davis's testimony and the 911 call records contradicted Ferdinand's claim that he called 911. Finally, Ferdinand's testimony at trial conflicted with his statements to the police after the shooting.

The jury, therefore, could reject Ferdinand's testimony, including his claims that Snowden grabbed his wallet, threatened to kill him, and attempted to take his gun. *Id.* Furthermore, the jury was entitled to consider his testimony dishonest and as "additional affirmative evidence of his guilt." *Staton v. Commonwealth*, 36 Va. App. 282, 289 (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)), *aff'd on reh'g en banc*, 37 Va. App. 238 (2001). The jury could, and in fact did, accept what the surveillance video appears to show: Snowden walked backwards away from Ferdinand as Ferdinand advanced and then shot Snowden multiple times. The jury's verdict was supported by evidence that demonstrated that Snowden had no weapon in his hand and was retreating and by evidence that showed that at least one bullet was found to have struck Snowden in his back. *See Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977). In short, Snowden did not commit an overt act that would result in an imminent threat of serious bodily harm to Ferdinand, yet Ferdinand followed Snowden and shot him numerous times (including at least one time in the back).

The trial court did not err by denying Ferdinand's renewed motion to strike at the close of all the evidence. "By finding [a] defendant guilty, therefore, the factfinder has found by a process of elimination that the evidence does not contain a reasonable theory of innocence." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "As the Supreme Court has admonished and we here emphasize, it is the *fact finder*, not this Court, that determines whether a defendant's hypothesis is reasonable." *Fary v. Commonwealth*, 77 Va. App. 331, 347 (2023) (en banc) (citing *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). A jury's "rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)). Given all the evidence, taken in the light most favorable to the Commonwealth (as we must since the Commonwealth prevailed at trial), we cannot say that no rational factfinder could reject Ferdinand's theory of self-defense and then find Ferdinand guilty of second-degree murder. *See Riner*, 268 Va. at 330; *Scott*, 292 Va. at 381.

## III. CONCLUSION

The Commonwealth's evidence was competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that Ferdinand was guilty of second-degree murder and guilty of the use of a firearm in the commission of a felony when he shot Snowden multiple times as Snowden backed away, unarmed. For all of these reasons, we affirm the judgment of the trial court.

*Affirmed.*